Harry LEWIS, Plaintiff,

v.

F. Wayne VALLEY et al., Defendants.

No. 77 Civ. 5788(PNL).

United States District Court,
S. D. New York.

July 2, 1979.

Morris J. Levy, New York City, for plaintiff.

H. Bartow Farr, Jr., Stephen A. Weiner, New York City, for defendants.

LEVAL, District Judge.

This action is brought by a shareholder, Harry Lewis, in "derivative" and "representative" capacity against the Singer Company and present and former directors. The first four counts seek to set aside four different executive compensation and stock

option plans [1] on the grounds that the proxy material which solicited approval of the plans violated Section 14 of the Securities Exchange Act, 15 U.S.C. § 78n by failing to disclose alleged "secret, unauthorized and illegal payments in sums in excess of $4,400,000 consisting of illegal discounts, rebates, payoffs and political contributions to secure domestic and foreign business and special political favors" during the period between January 1, 1967 and December 31, 1976. The complaint does not describe the alleged undisclosed payments with any greater specificity.

The Fifth Count alleges a violation of Section 10(b) of the Exchange Act and asks damages against the directors who approved the issuance of stock or other compensation under the above-named compensation plans. The Sixth Count is a pendent state claim against "individual directors" based on the theory of breach of fiduciary duty and seeking damages in excess of $4.4 million.

The defendants move to dismiss under Rules 12(b)(1), 12(b)(6), 9(b), 11 and 23.1, F.R.Civ.P.

I find that for a number of reasons the complaint must be dismissed.

■ First, insofar as the complaint proceeds as a derivative action, it is fatally defective under Rule 23.1, F.R.Civ.P. This rule requires a plaintiff in a derivative action to allege "with particularity the efforts, if any, made by the plaintiff to obtain the action he desires from the directors or comparable authority and, if necessary, from the shareholders or members, [as well as] the reasons for his failure to obtain the action or for not making the effort." The rule has been read to embody a substantive policy favoring the intra-corporate exhaustion of remedies. *See* 3B J. MOORE, MOORE'S FEDERAL PRACTICE, ¶ 23.1.19 at 23.1–90 (1978), discussing *In re Kauffman*, 479 F.2d 257 (1st Cir.), *cert. denied*, 414 U.S. 857, 94 S.Ct. 161, 38 L.Ed.2d 107 (1973).

Plaintiff here alleges no such efforts and conceded at argument that none have been made. The complaint alleges no reasons for failure or for not having made the effort, except the conclusory allegation that "all members of the Board of Directors who are officers or key employees of SINGER are and have been participants under [the various plans attacked] and have been granted stock options and stock and cash awards pursuant to such Plans." Complaint at ¶ 14(a). Plaintiff argues that for this reason it is against the interests of the officer-directors to bring an action to avoid the plans. But plaintiff does not allege the number of directors who currently constitute the Board, nor how many of them are "officers or key employees of SINGER" [2], nor why a demand on disinterested board members would be futile, if interested Board members were disqualified from voting on this question.

Directors' mere status as defendants to the action is not enough to excuse demand. Nor does the mere involvement of Board members in the transaction or transactions attacked mean that demand need not be made. *See Brooks v. American Export Industries, Inc.*, 68 F.R.D. 506 (S.D.N.Y.1975).

I find no justification for failure to follow the procedures required by Rule 23.1. *See Elfenbein v. Gulf & Western Industries, Inc.*, 590 F.2d 445 (2d Cir. 1978). The complaint is therefore "procedurally" defective and must be dismissed to the extent it alleges a derivative action.

The complaint also must be dismissed by reason of the insufficiency of its substantive allegations.

■ As an action to set aside the four compensation plans, the complaint first of all is defective for lack of specificity in its allegations of fraud. Rule 9(b), F.R.Civ.P. requires "the circumstances constituting

---

1. Count 1—The 1967 stock option plan; Count 2—The 1968 Executive Compensation Plan; Count 3—The 1968 Stock Purchase Plan; Count 4—The 1976 Stock Option Plan.

2. Of those current board members named as defendants in the complaint, only a minority are alleged to have held positions as employees. First Amended Complaint at ¶ 8.

fraud [to] be stated with particularity." *See Lowenschuss v. Kane*, 520 F.2d 255, 262 (2d Cir. 1975). Paragraph eleven, which purportedly sets forth the substantive allegations, is little more than an attempt to acquire a fishing license into the corporate defendant's affairs over a ten year period. *See Segan v. Dreyfus Corp.*, 513 F.2d 695 (2d Cir. 1975). The complaint certainly does not "identify . . . the misrepresentations which were allegedly made . . . ." *Schlansky v. United Merchants and Manufacturers, Inc.*, 443 F.Supp. 1054 (S.D.N.Y. 1977).[3] Furthermore, the complaint's averments of fraud are defectively vague in another respect. The complaint does not allege with specificity that those responsible for writing and approving the proxy solicitations complained of knew, or had reason to know, of the "questionable payments" alleged. And see *Ross v. A. H. Robins Co., Inc.*, 465 F.Supp. 904 (S.D.N.Y. 1978) (role of each defendant insufficiently alleged).

■ Apart from the fatal lack of particularity, the complaint also fails more fundamentally to allege a violation of Section 14 of the Exchange Act and the Proxy Rules authorized thereunder. Rule 14a–9(a) prohibits the use of a proxy statement

> which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact or which omits to state any material fact necessary in order to make the statements therein not false or misleading. . . .

Under this rule an omission will not vitiate the proxy materials unless it relates to a material fact. The test for materiality under § 14 has been considered and stated by the Supreme Court in *TSC Industries, Inc. v. Northway, Inc.*, 426 U.S. 438, 96 S.Ct. 2126, 48 L.Ed.2d 757 (1976). The Court

there held that "[a]n omitted fact is material if there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to vote." *Id.* at 449, 96 S.Ct. at 2132.

■ The vague conclusory contentions of the complaint fail completely to demonstrate that the information allegedly omitted might so have influenced the reasonable shareholder in his vote. Even if the complaint be read to incorporate the matter set forth in Singer's 1977 8–K Report (*see* footnote 3) I find it fails to meet the materiality standard of the *TSC* case, *supra*.[4]

The great majority (at least when measured in terms of dollar amount) of the incidents referred to in the 8–K are so-called "questionable" payments made abroad in connection with the sales of the company's products. The making of such payments was not then illegal under the laws of the United States. Indeed, nothing shows that the payments were illegal under the laws of the unidentified foreign countries where they were made. Much less is it shown that such payments were not in accordance with the universal necessary business practices of those countries.

The only items uncovered by the company's investigation covering 6 years (as revealed in the 8–K) which raised even a question whether laws of the United States had been violated were "four flights having allocable costs aggregating $1,100 made by a domestic subsidiary's airplane between 1971 and 1973 on which federal political figures were passengers under circumstances in which such flights may have involved violation of federal law; . . . a payment of $2,000 in 1974 by an employee of the registrant to an employee of a domestic quasi governmental agency (which was reported by [Singer] to the U. S. Attorney's

---

3. Plaintiff would have the court read the complaint to incorporate disclosures made in Singer's 1977 8–K Report concerning "questionable" payments dating back to January 1, 1971. (*See* Aff. of Morris J. Levy, dated September 20, 1978). A first answer is that the complaint does not incorporate these disclosures. A second is that the disclosures of the 8–K are

not consistent with the broad allegations of the complaint.

4. As the 8–K refers to nothing earlier than 1971, it cannot be contended that the information there disclosed was material to the shareholders' decision to approve the 1967 or 1968 plans.

office and apparently did not result in any business); . . . materials costing $450 provided in 1975 to an employee of a domestic utility supplier. . . . [and] shipping rebates aggregating $32,000 received in 1971 and recorded as income on [Singer's] books, the receipt of which may have been illegal under the United States Shipping Act of 1916 . . . . ."

There is no allegation of the extent to which any participant in the questionable payments derives benefits from the compensation plans approved. If the benefits of the plans do not accrue to those responsible for the payments, or do not accrue to them otherwise than as an across-the-board benefit to numerous employees of the same level, the non-disclosure would not be material under plaintiff's theory.

Finally, it is not suggested that any representative of the corporation engaged in self-dealing by any such payment or that the payments were not intended exclusively for the benefit of the corporation.

On appraisal of all the factors, I find no substantial likelihood that the hypothetical reasonable shareholder would have considered this information significant in deciding how to vote on the executive compensation and stock option plans to which the challenged proxy material related. Otherwise put, the undisclosed material did not go to "the real nature of the questions" submitted to the shareholders for their vote. *Maldonado v. Flynn*, 597 F.2d 789, 796 (2d Cir. 1979), quoting from H.R.Rep. No. 1383, 73d Cong., 2d Sess. 14; S.Rep. No. 792, 73rd Cong., 2d Sess. 12.

The recent case of *Maldonado v. Flynn, supra*, is not to the contrary. For there, the matters which should have been disclosed to the shareholders in proxy material for the re-election of directors involved breaches of fiduciary duty and self-dealing for the benefit of directors standing for election and to the detriment of the corporation. In circumstances carrying a flavor of abuse of trust, a stock option plan had been amended, first, to permit officer-directors to profit from inside information and, second, to shift to them tax benefits which otherwise would have gone to the corporation. Furthermore these amendments to the stock option plan had been described in previous proxy material in a manner which the court found to be "a half truth and quite misleading." 597 F.2d at 797.

In ruling that the omissions alleged would constitute a violation of the Proxy Rules, the court explicitly distinguished non-disclosure of issues impugning the loyalty and honesty of directors *"in their dealings with the corporation to which they owe a fiduciary duty," id.* at 796, from non-disclosure of transactions "intended for the corporation's benefit" including "illegal foreign payments" or questions as to the "legality of transactions approved by the board". Claims of the latter type were found to be the kind which courts "have consistently . . . rejected" when litigants sought "to dress [them] up . . . in a § 14(a) suit of clothes . . . ." [5]

■ In his fifth cause of action, plaintiff relies on § 10(b) of the Securities Exchange Act, 15 U.S.C. § 78j and Rule 10b–5. Plaintiff's theory under 10(b), as explained at oral argument, is that the proxy statements challenged in the first four causes of action contained misleading omissions which were made in connection with the subsequent sale of securities by the corporation pursuant to the compensation plans adopted. As such the cause of action under § 10(b) is substantially similar to that on which plaintiff relies in his first through fourth causes of action. Dismissal of the fifth cause of action is mandated for all the reasons stated above with respect to the first four

5. In a number of cases litigants have attacked proxy statements for failure to disclose questionable foreign payments. Courts have rejected these claims on a variety of different grounds, *see, e. g., In re Tenneco Securities Litigation*, 449 F.Supp. 528 (S.D.Tex.1978); *Limmer v. General Telephone and Electronics*, ['77–'78 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 96,111 (S.D.N.Y.1977); *Lewis v. Elam*, ['77–'78 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 96,013 (S.D.N.Y.1977); *Levy v. Johnson* ['76–'77 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 95,899 (S.D.N.Y.1977).

causes of action.[6] There is also a question as to the fifth cause of action whether omissions alleged were made 'in connection with' the sale of securities. *See Ketchum v. Green,* 557 F.2d 1022 (3d Cir.), *cert. denied,* 434 U.S. 940, 98 S.Ct. 431, 54 L.Ed.2d 300 (1977).

■ As to the state law claim alleged as the sixth count, little need be said. The court is asked to take jurisdiction on a pendent basis, but there is no valid federal claim to which it may attach.

Defendants' motion is granted and the complaint dismissed.

SO ORDERED.

---

6. The standard of materiality for an action under § 10(b) is identical to that under § 14(a). *Goldberg v. Meridor,* 567 F.2d 209, 218–19 (2d Cir. 1977), *cert. denied,* 434 U.S. 1069, 98 S.Ct. 1249, 55 L.Ed.2d 771 (1978); *Joyce v. Joyce Beverages, Inc.,* 571 F.2d 703, 707, n. 6 (2d Cir.), *cert. denied,* 437 U.S. 905, 98 S.Ct. 3092, 57 L.Ed.2d 1135 (1978).