AMALGAMATED CLOTHING AND
TEXTILE WORKERS UNION,
AFL–CIO, etc., Plaintiff,

and

Seafarers International Union of North
America, Atlantic, Gulf, Lakes and In-
land Waters District, AFL–CIO, etc., In-
tervening Plaintiff,

v.

J. P. STEVENS & CO., INC., et
al., Defendants.

No. 77 Civ. 5317.

United States District Court,
S. D. New York.

July 11, 1979.

Szold, Brandwen, Meyers & Altman, New York City by Irving J. Alter, Richard G. Liskov, New York City, Rogovin, Stern & Huge, Washington, D. C. by Harry Huge, Joel I. Klein, David R. Boyd, David A. Martin, Washington, D. C., for plaintiff.

Schulman, Abarbanel & Schlesinger, New York City by David Jaffe, New York City, for intervening plaintiff.

Paul, Weiss, Rifkind, Wharton & Garrison, New York City by Jay H. Topkis, Gerald D. Stern, Susan P. Carr, Jamie B. W. Stecher, New York City, for defendants.

## MEMORANDUM OPINION

LEVAL, District Judge.

This is a motion by the defendants J. P. Stevens & Co., Inc. ("Stevens") and thirteen of its directors to dismiss the complaint for failure to state a claim upon which relief may be granted, Rule 12(b)(6), F.R.Civ.P.

Stevens, a Delaware corporation with its principal place of business in New York, is registered with the Securities and Exchange Commission pursuant to § 12 of the Securities and Exchange Act of 1934, 15 U.S.C. § 78*l*. The thirteen individual defendants have all served as Stevens' directors from at least 1976 to the time of the filing of plaintiffs' amended complaints in April of 1978, with the exception of defendant Mitchell whose directorship terminated in March, 1978.

Plaintiff Amalgamated Clothing and Textile Workers Union, AFL–CIO ("ACTWU") and intervenor Seafarers International Union of North America, Atlantic, Gulf Lakes and Inland Waters District, AFL–CIO ("Seafarers"), are holders of 12 and 200 shares, respectively, of the common stock of Stevens.

Alleging violations of § 14(a) of the Securities and Exchange Act of 1934, 15 U.S.C. § 78n(a) and Rule 14a–9, 17 C.F.R. § 240.-14a–9, plaintiffs seek a broad variety of relief, including setting aside the most recent election of directors, invalidating shareholders' votes on six shareholder proposals, enjoining the filing and dissemination of annual reports, other reports and proxy materials without court approval, enjoining the omission of material facts concerning Stevens' labor policies from its proxy materials, and enjoining violation of the federal labor laws.

The central allegation of the lengthy complaints is the claim that the elections of Stevens' directors from 1972 through 1978 are invalid and that the recent election should be set aside because the company's proxy solicitations falsely stated "that all nominees for the Board of Directors were qualified to serve as fiduciaries" and omitted to state that the nominees "either knowingly and willfully participated in a concerted effort to thwart the labor laws of this country . . . or failed to perform their responsibilities as fiduciaries by insuring that management did not engage in such practices," and that as a result "these directors have caused the Company needlessly to expend large sums of money, have harmed the goodwill and reputation of the Company, and have placed the Company in a position where it stands to suffer continuing significant economic harm in the future" (ACTWU Amended Complaint ¶¶ 64, 65, 71, 72, 88, 89; Seafarers Amended Complaint ¶¶ 54, 55, 70, 71).

Additionally, plaintiffs allege that the 1978 election was tainted because the proxy materials failed to disclose the pendency of this lawsuit and because the proxy materials stated that two of the nominees, James D. Finley and David W. Mitchell, were directors of Manufacturers Hanover Trust Company without adding that they "would not be continuing as directors thereof as a result of Stevens' labor policies and practices" (ACTWU Amended Complaint ¶¶ 89(c), 89(d); Seafarers Amended Complaint ¶¶ 71(c), 71(d)).

The unions also allege proxy rule violations in statements made by Stevens in response to shareholder proposals submitted at the 1976, 1977 and 1978 annual meetings. The 1976 shareholder proposal recommended that the Stevens Board appoint a committee of outside directors to study and report to shareholders on the costs of Stevens' then current labor disputes. The 1977 proposal requested the Board to report to shareholders on Stevens' labor policies and practices. Three 1978 proposals requested a Board report to shareholders on the company's labor policies and practices, the impact of the company's labor-management policies on the economic performance of the company's stock, and on employee occupational safety and health. A fourth 1978 proposal asked the Board to establish a review committee to advise on management-employee relations. Each of these proposals was overwhelmingly defeated. The complaint alleges that management's statements addressed to these proposals were misleading essentially for failure to include the same kinds of information which plaintiffs contend should have been included in the proxy statements.

### The Merits

Section 14(a) of the 1934 Act prohibits solicitation of proxies "in contravention of such rules and regulations as the Commission may prescribe . . . ." Rule 14a–9 prohibits solicitation by means of a proxy statement which contains "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading. . . ." Under the Supreme Court's decision in *TSC Industries, Inc. v. Northway, Inc.*, 426 U.S. 438, 96 S.Ct. 2126, 48 L.Ed.2d 757 (1976), "an omitted fact [or a misrepresentation] is material if there is substantial likelihood that a reasonable shareholder would consider it important in deciding how to vote." 426 U.S. at 449, 96 S.Ct. at 2132.

Plaintiffs contend that the proxy rule requires in connection with the election of directors the disclosure of Stevens' alleged corporate policy to "thwart", "resist", and "abuse" the federal labor laws as well as alleged expenses (primarily legal fees) resulting from such policies. Plaintiffs do not dispute that Stevens has disclosed the various labor litigation in which it has been involved and the specific findings of labor law violations. Rather, disclosure is sought of the corporate *policy* to *thwart* the labor laws—in substance the aims and intentions of the Stevens board with respect to a body of law.

I conclude for at least two reasons that the proxy rule does not require disclosures of this type.

The first reason turns on a distinction recently emphasized by the Court of Appeals in *Maldonado v. Flynn*, 597 F.2d 789 (2d Cir. 1979). There, finding that the pleadings stated an actionable omission from proxy statements, the Second Circuit underlined that the omissions pertained to alleged breaches of the officer-directors' fiduciary duties to the corporation rather than challenges to their judgment, or even integrity, in making decisions for the benefit of the corporation. The decision explicitly distinguishes matters impugning the loyalty and honesty of directors "in their dealings with the corporation to which they owe a fiduciary duty", *id.* at 796, as to which disclosure is required because of the stockholders' special interest in the loyalty of their directors, from transactions "intended for the corporation's benefit", in-

cluding "illegal foreign payments" and questions as to the "legality of transactions approved by the board." Claims of the latter type were characterized as of the type which courts "have consistently . . rejected" when litigants sought "to dress [them] up . . . in a § 14(a) suit of clothes . . . ."

I do not read *Maldonado v. Flynn* as meaning that instances of illegal or immoral conduct are never required to be included in proxy materials unless they relate to self-dealing; nor do I mean to imply so rigid a rule. There are clearly instances of illegal conduct by director-nominees, unrelated to self-dealing, which would have to be disclosed, especially where they involved criminal convictions. *See* Item 3(f) of Regulation S–K, 17 C.F.R. § 229.20; *SEC v. Freeman*, [1978] Fed.Sec.L.Rep. (CCH) ¶ 96,361 at 93,244 (N.D.Ill.1978); *Chris-Craft Industries, Inc. v. Independent Stockholders Committee*, 354 F.Supp. 895, 914 (D.Del.1973); *Rafael v. Geneen*, [1972–73] Fed.Sec.L.Rep. (CCH) ¶ 93,505 (E.D.Pa. 1972); *Cooke v. Teleprompter Corp.*, 334 F.Supp. 467 (S.D.N.Y.1971).

I find rather that the present allegations fall into a category recognized by *Maldonado*, relating to a questioning of management's business judgment, as to which omissions from proxy materials soliciting reelection of directors are not actionable even if claims of illegality of the sort alleged here are involved. *See* cases cited in *Maldonado v. Flynn, supra*, at 796; *Markewich v. Adikes*, 422 F.Supp. 1144, 1147 (E.D.N.Y. 1976). *See also Lewis v. F. Wayne Valley et al.*, Dkt. No. 77–5788 (S.D.N.Y.1979); *In re Tenneco Securities Litigation*, 449 F.Supp. 528 (S.D.Tex.1978). As to plaintiffs' allegation that Stevens' labor policy has resulted in significant expenses, management is clearly not required to submit in proxy statements seeking reelection of directors all business judgments whenever it would be possible for shareholders to disagree with their efficacy or wisdom. *See Golub v. PPD Corp.*, 576 F.2d 759 (8th Cir. 1978).

■ The second reason why I find that the complaint fails is my conclusion that the proxy rules simply do not require management to accuse itself of antisocial or illegal policies.

The present complaint makes this conclusion particularly easy to reach since it alleges only an effort "to thwart" the labor laws, and not to violate them. Dictionary definitions of "thwart" include "to run counter to; . . . to oppose successfully; . . . to defeat the hopes, aspirations or plans of; . . . to place an obstruction across; . . . to be in opposition . . . ." *Webster's New Third International Dictionary* (1976 ed.). The word does not necessarily imply with respect to a law that it has been violated, but only that the law has been prevented from accomplishing its purpose. There is no principle in American law which asks subjects to do more than the law requires. Shareholders would expect their management to organize the company's affairs, for example, so as to minimize taxes, not to maximize them, although this might well thwart to a degree the revenue-raising purposes of the tax laws.

Thus, as drafted, I find that the complaint does not come close to stating an omission of required matter.

But assuming that only a stroke of the pen will be needed to amend the complaint to substitute an intention to "violate" in place of an intention to "thwart", I will discuss the complaint as if already so amended. My conclusion remains unchanged that the proxy rules cannot be reasonably construed to require such self-accusation of illegal intentions.

■ The reason has to do with the purposes of the statute and rule, which are to bring about disclosure to the shareholders of important factual matters which they need in order to make informed choices on matters submitted for their decision. It is to insure "fair corporate suffrage" and "to prevent management or others from obtaining authorization for corporate action by means of deceptive or inadequate disclosure." *J. I. Case Co. v. Borak*, 377 U.S. 426,

431, 84 S.Ct. 1555, 1559, 12 L.Ed.2d 423 (1964), quoting from H.R.Rep. No. 1383, 73rd Cong. 2d Sess., 13. *See Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970). The purpose of the statute and rule is not to create a subsequent remedial federal cause of action; private causes of action are implied only in circumstances where "such remedies . . . are necessary to make effective the congressional purpose." *J. I. Case Co. v. Borak, supra*, 377 U.S. at 433, 84 S.Ct. at 1560.

■ No matter how the proxy rule is construed, indeed even if it explicitly stated such a duty, corporate management would not announce in proxy literature an intention to violate laws. It is simply contrary to human nature. The rule, if it were construed to require this, would never succeed in its purpose of bringing such disclosure to the shareholders. It would do nothing more than license retrospective litigation, casting doubts on the results of shareholder elections and the legitimacy of management. Such an interpretation would not enhance the accomplishment of the purposes of the proxy rules, but would only create litigation and insecurity in the tenure of management. I conclude that the rule cannot be reasonably interpreted to require reporting of illegal intentions.

This conclusion does not flow from a parsing of the words of the rule, but rather from an overall understanding of the rule itself. Intentions are a problematic subject of disclosure because they are so easily changed. Nonetheless, I recognize that in certain instances an intention, when omitted, can be an omission of a material fact. This is especially so in Rule 10b–5 litigation where a statement of an existing or changed intention may be "necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading . . . ." Rule 10b–5, 17 C.F.R. § 240–10b–5. *See TSC Industries, Inc. v. Northway, Inc., supra*, 426 U.S. at 449, 96 S.Ct. at 2132; *Joyce v. Joyce Beverages Inc.*, 571 F.2d 703, 707 n. 6 (2d Cir.) *cert. denied*, 437 U.S. 905, 98

S.Ct. 3092, 57 L.Ed.2d 1135 (1978); *Brascan Ltd. v. Edper Equities Ltd.*, 477 F.Supp. 773 at 788 (S.D.N.Y.1979). *See also Omega Executive Services, Inc. v. Grant*, [Current] Fed.Sec.L.Rep. (CCH) ¶ 96,848 (S.D.N.Y. 1979).

Nor do I mean to suggest that an illegal intention could never be "material", in the sense that a reasonable shareholder would not "consider it important in deciding how to vote." *TSC Industries, Inc. v. Northway, Inc., supra. See Cooke v. Teleprompter Corp.*, 334 F.Supp. 467 (S.D.N.Y.1971).

But to conclude from such an analysis that the proxy rules require disclosure of illegal intentions would miss the forest for the trees. The relevant distinction is implicitly recognized in the minimum disclosure requirements set forth in the S.E.C.'s Schedule 14A, 17 C.F.R. § 240.14a–101, promulgated to accompany Rule 14a–9. Item 6 of Schedule 14A (incorporating the disclosure requirements of Item 3(f)(2) of Regulation S–K, 17 C.F.R. § 229.20) requires a nominee for a directorship to disclose material criminal convictions and criminal proceedings pending against him. It does not require disclosure of illegal intentions or even of crimes committed which have not been the subject of legal proceedings. This is not because shareholders would not be interested in such information; rather it is a realistic recognition of the factors discussed above which preclude interpreting Rule 14a–9 in this fashion. In my view a requirement that illegal intentions be disclosed would make a silly, unworkable rule. It would not promote increased disclosure, but would serve only to support vexatious litigation and abusive discovery.

■ The remaining allegations of the complaint must fail for the same reasons as those discussed above. As to the failure to disclose the existence of this lawsuit, since the suit is without merit, its existence is not a material fact. *See Goldberger v. Baker*, 442 F.Supp. 659, 667 (S.D.N.Y.1977).[1]

■ As to management's responses to the shareholder proposals, once again management is not required to accuse itself of evil

---

1. The same considerations, as well as others, dispose of the claim based on failure to state

that certain nominee directors would not continue as directors of other corporations because

or illegal intentions. Plaintiffs' claim here is somewhat stronger because management did make self-serving declarations in response to the proposals, including statements that "it is not and never has been [Stevens'] policy to violate [the] law"; that Stevens has "a total commitment to conduct [its] affairs completely within the law"; that "the Company has offered contract terms [to its employees] believed to be fair and reasonable"; and that "the Company costs . . . attributable to the union organizing and related activities are not material in the Company's overall operation."

If management had undertaken in its responses to recite facts establishing its innocence, such recitation might well give rise to an obligation to disclose any additional facts needed to put the statements made in perspective or prevent them from being misleading. But the assertions complained of here amount to nothing more than protestations of innocence of mind. They do not give rise to an unrealistic obligation to declare guilt.

The motion is granted and the complaint is dismissed.

of Stevens' labor policies. As to this claim, furthermore, Stevens would not be privy to the reasons for another corporation's decision not to re-nominate those directors.