BANK AND TRUST COMPANY OF
OLD YORK ROAD, et al.

v.

Perch P. HANKIN, et al.

Civ. A. No. 80–1550.

United States District Court,
E.D. Pennsylvania.

Dec. 22, 1982.

Richard D. Greenfield, Robert P. Frutkin, Greenfield & Chimicles, P.C., Bala Cynwyd, Pa., Arnold Levin, Bala Cynwyd, Pa., for plaintiff.

Edward C. Mangel, Jr., Lawrence T. Bowman, White & Williams, Philadelphia, Pa., for defendants.

## MEMORANDUM

GILES, District Judge.

This action combines a claim under the federal securities laws for omissions in proxy materials with a state derivative action for breach of various fiduciary duties. Defendants now move for summary judgment. For the reasons which follow, the motion will be granted in part, and denied in part.

### I. BACKGROUND

#### A. *Parties*

Plaintiff Bernard M. Gross is a minority shareholder of the Bank of Old York Road

("Bank"). The Bank, designated in the complaint as a nominal defendant, is a Pennsylvania corporation.

The remaining defendants allegedly are involved in a web of family relationships, ownership interests, and business dealings so complicated that a complete description is impossible without the equivalent of a scorecard.

For example, defendant Perch Hankin is the brother of one defendant, uncle of three, brother-in-law of one, father-in-law of one, and father of another. He is a Bank officer and director. He controls two organizations which are defendants, is a partner in a third, and invests in a fourth organization, all of which allegedly dealt improperly with the Bank. In addition, Perch Hankin himself allegedly had wrongful dealings with the Bank. These dealings range from improper borrowing to laundering funds.

For present purposes, however, the defendants can be divided into three categories, each of which depends on a defendant's relationship to the Bank. (Each defendant may fall into more than one group.) The first category consists of Bank officers and directors and those alleged to control the Bank. The members of this group are: Perch Hankin, Moe Hankin, Lowen Hankin, the law firm of Hankin, Hankin & Hankin, Mandell Shankin, George Miller, Frank J. Siegel, and Henry Hilger. I shall refer to the first category as the "Bank group."

In the second category are the defendants who allegedly profited from direct improper dealings with the Bank. This group includes every defendant except Frank J. Siegel and Harry Hilger. I shall refer to the second category as the "dealing group."

The third category consists of defendants alleged to be partners or investors in an entity in the dealing group. Its members are Perch Hankin, Moe Hankin, George Hankin, Lowen Hankin, Mark Hankin and Robert Wappen. The last category will be referred to as the "partner group."

## B. The Complaint

Count I of plaintiff's complaint asserts that defendants violated the federal securities laws by omitting material facts from proxy statements. The proxies at issue were solicited to elect the Bank's Board of Directors between 1977 and the present. The alleged material omissions center around a course of conduct by which defendants sought to retain control over the Bank, operating it for their own benefit, rather than for the benefit of the other shareholders. Paragraph 25 of the complaint sets out twelve items which should have been disclosed so as not to make the proxy statements materially misleading. Each item in paragraph 25 will be analyzed below. However, examples of the alleged omissions include the terms of loans between defendants and the Bank, excessive legal fees, increases in one defendant's salary, the use of Bank monies for non-Bank purposes, improper auditing and false entries in corporate records.

Count II is styled as a derivative action on behalf of the Bank, based upon a variety of breaches of fiduciary duties. The conduct underlying this Count is essentially the same as in Count I and jurisdiction is alleged to be pendent. Defendant's motion for summary judgment is based upon plaintiff's failure to exhaust his intercorporate remedies and post a security bond before embarking on this derivative suit.

## C. What Has Gone Before

Earlier in this litigation, defendants moved to dismiss, or in the alternative, for summary judgment. In a Bench Opinion delivered on July 1, 1982, this court denied the motion to dismiss and left open the issue of summary judgment, pending further consideration. This opinion addresses that unresolved summary judgment motion.

One of the issues disposed of in that Bench Opinion was the applicability of section 14(a) and Rule 14a–9 of the Securities Exchange Act of 1934, 15 U.S.C. § 78n(a) (1976); 17 C.F.R. § 240.14a–9 (1982), upon which the complaint was originally based. Defendant properly contended that the cause of action was encompassed by section

12(i), 15 U.S.C. § 78*l*(i) and its implementing Federal Deposit Insurance Corporation (FDIC) rule, 12 C.F.R. § 335.206(a) (1982). Plainly put, section 12(i) is the analogue to section 14(a) for Banks. Section 12(i) refers specifically to section 14(a) and allows the FDIC to promulgate "substantially similar regulations to regulations and rules issued by the Commission under this section and sections ... 14(a) ...." Section 12(i), 15 U.S.C. § 78*l*.[1] Indeed, the rule promulgated pursuant to section 12(i) is virtually identical to rule 14a–9. Rule 14a–9 provides:

> No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

17 C.F.R. § 240.14a–9 (1982). The rule which implements section 12(i) reads as follows:

> No solicitation or communication subject to this section shall be made by means of any statement, form of proxy, notice of meeting, or other communication, written or oral, containing any statement that, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or that omits to state any material fact necessary in order to make the statement therein not false or misleading or necessary to correct any statement in an earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter that has become false or misleading.

12 C.F.R. § 335.206(a) (1982). The statutory cross-reference to section 14(a) contained in section 12(i) and the identity between the two rules quoted above, lead me to conclude that these two sections should be treated the same. Thus, in my Bench Opinion I decided that a private right of action lies under section 12(i) as well as under section 14(a). This conclusion was dictated by the fact that the FDIC had the choice to either issue a regulation that was "substantially similar" to Rule 14a–9 or promulgate a different rule if "necessary or appropriate in the public interest." Section 12(i), 15 U.S.C. § 78*l*(i). By issuing a rule with almost the exact same language,[2] the FDIC gave its imprimatur to the substance of Rule 14a–9. Therefore, although this case arises under section 12(i) and its implementing rule, I will rely upon cases decided under section 14(a) and Rule 14a–9.[3]

After delivering the Bench Opinion, I imparted some of my thoughts on the poten-

---

1. Section 12(i) provides:

   Section 12(i). In respect of any securities issued by banks the deposits of which are insured in accordance with Federal Deposit Insurance Act, ... the powers, functions, and duties vested in the Commission to administer and enforce sections 12, 13, 14(a), 14(c), 14(d), 14(f) and 16, with respect to all other insured banks are vested in the Federal Deposit Insurance Corporation. [T]he Federal Deposit Insurance Corporation, shall have the power to make such rules and regulations as may be necessary for the execution of the functions vested in them as provided in this subsection. *In carrying out their responsibilities under this subsection, the agencies named in the first sentence of this subsection shall issue substantially similar regulations to regulations and rules issued by the Commis-*
   *sion under sections 12, 13, 14(a), 14(c), 14(d), 14(f), and 16, unless they find that implementation of substantially similar regulations with respect to insured banks and insured institutions are not necessary or appropriate in the public interest or for protection of investors, and publish such findings, and the detailed reasons therefor, in the Federal Register.* (emphasis added)

2. The first phrase of the FDIC rule is worded slightly different than Rule 14a–9. The remainder of each rule is identical, with the exception of the substitution of "whichs" for "thats."

3. This is also a practical necessity, as I have been unable to unearth any cases decided under section 12(i).

tial weaknesses of the complaint, giving plaintiff an ample opportunity to refine and clarify his allegations. However, plaintiff indicated his intent to rest upon his complaint. In response to the proxy material offered by defendants, plaintiff has submitted only his own affidavit, which states that the allegations in the complaint are derived from discussions he had with Max Hankin, a non-defendant shareholder.

## II. DISCUSSION

Summary judgment has been called a "drastic remedy" which should only be granted when there are no genuine issues of material fact so as to entitle one party to judgment as a matter of law. *See Continental Insurance Co. v. Bodie,* 682 F.2d 436, 438–39 (3d Cir.1982); *Hollinger v. Wagner Mining Equipment Co.,* 667 F.2d 402, 405 (3d Cir.1981). When considering the motion, the court must resolve all reasonable inferences in favor of the non-moving party. Bearing this standard in mind, I must measure the allegations in plaintiff's complaint against the proxy materials.

### A. *Count I: The Federal Securities Claims*

Full and fair disclosure is the gravamen of section 14(a) and Rule 14a–9, and hence of section 12(i) as well. To protect the value of corporate suffrage, shareholders must be educated about the issues on which they will be expected to vote. Only when they are armed with all relevant facts can shareholders make an informed and effective choice. *See Mills v. Electric Auto Lite, Co.,* 396 U.S. 375, 381, 384–85, 90 S.Ct. 616, 620, 621–22, 24 L.Ed.2d 593 (1970); *J.I. Case Co. v. Borak,* 377 U.S. 426, 431, 84 S.Ct. 1556, 1559, 12 L.Ed.2d 423 (1964). The Congressional intent behind section 14(a) was to promote "the free exercise of the voting rights of stockholders by ensuring that proxies would be solicited with explanation to the stockholder of the real nature of the questions for which authority to cast his vote is sought." *Mills,* 396 U.S. at 381, 90 S.Ct. at 620 (quoting H.R.Rep. No. 1383, 73d Cong., 2d Sess., 14; S.Rep. No. 792, 73d Cong., 2d Sess. at 12). To this end, section

14(a) and its implementing rule 14a–9, prohibit the use of false or misleading statements or omissions of material fact in the solicitation of proxies.

The determination of whether these antifraud provisions have been violated involves a two-step process. In the first instance, there is the more obvious issue of whether there was a misstatement or omission. The more problematic issue is whether the omission is "material." The United States Supreme Court has held that facts are material if there is a "substantial likelihood that a reasonable shareholder would consider it important in deciding how to vote." *TSC Industries, Inc. v. Northway, Inc.,* 426 U.S. 438, 449, 96 S.Ct. 2126, 2132, 48 L.Ed.2d 757 (1976). As the Court stated: "[p]ut another way, there must be a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of the information made available." *Id.* 426 U.S. at 449, 96 S.Ct. at 2132.

The concept of materiality is used to delineate what should and what should not be actionable under the federal securities laws. In the 10b–5 area, for example, the Supreme Court has clearly held that the securities laws are not the appropriate vehicle for the redress of breaches of fiduciary duties. *See Santa Fe Industries, Inc. v. Green,* 430 U.S. 462, 476, 97 S.Ct. 1292, 1302, 51 L.Ed.2d 480 (1977). Although this broad proposition does not apply under section 14(a), there is a parallel. In the section 14(a) area, some courts distinguish between director misconduct involving self dealing and misconduct which is little more than the breach of a fiduciary duty or the waste of corporate assets. Non-disclosure of the former is held to be presumptively material; the latter is never material. *See, e.g., Gaines v. Haughton,* 645 F.2d 761, 776–77 (9th Cir.1981), *cert. denied,* 454 U.S. 1145, 102 S.Ct. 1006, 71 L.Ed.2d 297 (1982); *Weisberg v. Coastal States Gas Corp.,* 609 F.2d 650, 655 (2d Cir.1979), *cert. denied,* 445 U.S. 951, 100 S.Ct. 1600, 63 L.Ed.2d 786 (1980); *Maldonado v. Flynn,* 597 F.2d 789, 796–97 (2d Cir.1979). As one court noted; "[n]o

case [has] held that the proxy rules are violated because management has allegedly mismanaged the company, and the proxy statement does not say so." *Goldberger v. Baker,* 442 F.Supp. 659, 667 (S.D.N.Y.1977) (quoting *Markewich v. Adickes,* 422 F.Supp. 1144, 1147 (E.D.N.Y.1976). *See also, Selk v. St. Paul Ammonia Products, Inc.,* 597 F.2d 635, 639 (8th Cir.1979) (federal securities laws do not cover all breaches of fiduciary duties or instances of mismanagement). This approach, which will have import here, strikes a sound balance. Shareholders are permitted to recover when they are kept in the dark about a director who has been self-dealing without totally transforming the securities laws into an enforcement mechanism for all state created breaches of fiduciary duties.

**1.** *Change in the Size of the Board of Directors*

In paragraph 25(a) of the complaint, plaintiff alleges a material omission in the defendants' failure to disclose the reason behind the reduction in the size of the Bank's Board of Directors. In 1977, the size of the Board was increased from nine to fourteen members. The 1978 proxy materials contained a proposal which would set the number of directors at five. Plaintiff claims that this was done because the large number of directors made it difficult for the defendants "to carry out the Bank's business for their principle benefit." Complaint ¶ 25(a). However, as I pointed out in my Bench Opinion, the 1978 proxy materials do detail the reasons for the reduction in size with some candor. They outline the rather intense disagreements between ten defendant directors and the remaining four directors. The proxy statement noted that the relationships had "deteriorated to the point that the disagreements are disruptive and divisive and detract from reasoned deliberation in handling affairs of the Bank." 1978 Proxy Statement at 4. The decrease was also stated to be in the best interest of the Bank and would facilitate more frequent meetings of the Board.

Plaintiff argues that this disclosure was insufficient in that it failed to explain that the defendant directors wished to perpetuate their control of the Bank. This motive is rather obvious; it is human nature to desire to keep one's job and continue in a position of control. As one court noted; "management need not disclose its motives ... especially ... where the undisclosed motivation is an obvious one, such as management's desire to perpetuate itself in office." *Bertoglio v. Texas International Co.,* 488 F.Supp. 630, 650 (D.Del.1980). This Circuit has explained:

> The securities laws, while their central insistence is upon disclosure, were never intended to attempt any such measures of psychoanalysis or reported self-analysis. The unclean heart of a director is not actionable, whether or not it is "disclosed," unless the impurities are translated into actionable deeds or omissions both objective and external.

*Biesenbach v. Guenther,* 588 F.2d 400, 402 (3d Cir.1978). *See also Selk v. St. Paul Ammonia Products, Inc.,* 597 F.2d 635, 639 (8th Cir.1979); *Lavin v. Data Systems Analysts, Inc.,* 443 F.Supp. 104, 107 (E.D.Pa. 1977), *aff'd* 578 F.2d 1374 (3d Cir.1978).

Here, not only is the motivation obvious, but it is also quite apparent from the proxy materials who would remain in control should management's resolution rise victorious. Since "corporations are not required to address their shareholders as if they were children in kindergarten ...," *SEC v. Falstaff Brewing Corp.,* 629 F.2d 62, 67 n. 4 (D.C.Cir.), *cert. denied, Kalmanovitz v. SEC,* 449 U.S. 1012, 101 S.Ct. 569, 66 L.Ed.2d 471 (1980) (quoting *Richland v. Crandall,* 262 F.Supp. 538, 554 (S.D.N.Y. 1967)), I find the disclosure here to be sufficient as a matter of law and hence summary judgment is appropriate on this issue.

**2.** *Terms of Loans*

Paragraph 25(b) of the complaint alleges that the proxy materials failed to disclose the extent of and conditions surrounding loans made to the defendants and their affiliates. Specifically, loans were made on an unsecured or undersecured basis and therefore on terms more favorable

than were generally available. However, full disclosure was made on this point as well. The proxy materials for the years 1977 through 1980 listed the names of all directors, officers or affiliates to whom credit was extended, as well as their relationship with the Bank and one another. The amount of each loan, the range of interest rates and their status as secured or unsecured was plainly stated. In addition, the aggregate high during the year and the amount owing at the end of the year were also provided. The 1980 proxy statement shows that all of the loans were repaid in full. Again, I find that as a matter of law, this disclosure was sufficient.

Although section 14(a) mandates disclosure, there is a limit to the amount of detail required. The United States Supreme Court acknowledged this in *TSC Industries, Inc. v. Northway, Inc.*, 426 U.S. 438, 96 S.Ct. 2126, 48 L.Ed.2d 757 (1976) in adopting the "would" standard for materiality. If the threshold had been set lower, for example, everything a shareholder "might" consider important, in an effort to protect themselves, corporations would be required to deluge the shareholders with minutiae. *Id.* 426 U.S. at 448–49, 96 S.Ct. at 2131–32. When confronted with too much detail, it is impossible to discern what is really important; hence the important facts are buried among the trivial—"a result that is hardly conducive to informed decision-making." *Id.*

Here, the basic conditions and amounts of the loans were clearly and simply stated. The information was sufficient to apprise the shareholders of the situation and place them on notice if they have any further questions to direct to management. I find that it satisfies the requirements of the securities laws. *See Cohen v. Ayers*, 596 F.2d 733, 744 (7th Cir.1979) (where shareholders informed that directors were self-interested in a transaction, need not disclose exact percentage or number of interested directors voting for approval). Therefore,

summary judgment is also appropriate on this allegation.[4]

### 3. *Perch Hankin's Salary*

Another asserted ground for relief is defendants' failure to disclose that Perch Hankin's salary was increased. According to plaintiff, the increase was unwarranted as Hankin spent little time on Bank business and was in fact more active in the affairs of the Bank of King of Prussia (BOKOP), on whose Board Hankin also sat. Thus, he should have received part of his compensation from BOKOP. (¶ 25(e)). Again, this does not even rise to the level of an omission. The 1980 proxy statement indicated that Perch Hankin was being compensated at the rate of $50,000. Since each previous proxy solicitation had stated that no individual officer or director was paid more than $40,000 per year, the information on the raise was certainly available.

Additionally, the proxy materials do explain the affiliation between the Bank of Old York Road and BOKOP; that Perch Hankin is the President of BOKOP and that the directors and officers of the Bank of Old York Road own BOKOP. Thus, the shareholders were well aware that as President of BOKOP, Perch Hankin devoted a substantial amount of his time to that bank. In fact, this close association between the two banks might very well have inured to the benefit of the Bank of Old York Road. The federal securities laws do not require a time sheet on the company's President to be included in the proxy materials. I find that there was adequate disclosure and summary judgment is appropriate on this point as well.

### 4. *Legal Fees and Pension Plans*

Plaintiff also accuses the defendants of omitting information with respect to the reasons for the changes in the Bank's pension and profit sharing plans. These alterations were allegedly made only for the benefit of the controlling defendants. Complaint ¶ 25(d). However, the unchal-

---

4. A strong argument can be made that the disclosure of additional detail about the loans    would have gone beyond materiality.

lenged affidavit[5] of the Bank's Assistant Secretary, Harry Hilger, Jr., states that the Bank never had and does not presently have, a pension plan. Since Rule 56(e) of the Federal Rules of Civil Procedure does not allow the party opposing summary judgment to rely only on the allegations in the complaint once evidence has been submitted, summary judgment must be granted on this point.

■ However, neither the Hilger affidavit or the proxies mention a profit sharing plan. Therefore, summary judgment is not appropriate unless the information withheld would be immaterial as a matter of law. Accepting as true the facts alleged in the complaint, changing the profit sharing plan so as to benefit the controlling directors would most likely be material. Although the complaint did not allege that the Bank was harmed in any way, the behavior is a form of self-dealing. Under the dichotomy discussed earlier, the self-dealing of directors, especially in connection with their election, would be presumptively material. *See Gaines,* 645 F.2d at 776–77; *Weisberg,* 609 F.2d at 655. Hence, summary judgment must be denied on this point.

The complaint also asserts the failure to disclose the excessive fees paid to the law firm of Hankin, Hankin and Hankin (HHH) for their representation. Complaint ¶ 25(i). Yet the proxy materials for each year state that the firm of HHH represents the Bank, who the members of the firm are in relation to the controlling defendants and the amount paid in legal fees. Thus, it is impossible to find an omission, material or otherwise.

### 5. The Accountant

■ Defendants allegedly failed to disclose that the Bank's accountants, Laventhol and Horwath, were improperly auditing the Bank's financial statements. Complaint ¶ 25(1). It is further contended that the accountants knew or should have known that the statements were not prepared in accordance with generally accepted accounting procedures. The implication is

that had Laventhol and Horwath done their job properly, the acts of defendant would have been discovered and halted. Laventhol and Horwath are not named as defendants in this suit. Nor does the complaint allege that the named defendants were responsible for or had any knowledge of this breach of accepted accounting procedures. Thus, defendants could not be expected to disclose that which they did not know. Nor could defendants be expected to know what was and was not accepted accounting procedure. In the absence of some allegation linking the actions of the accountants to defendants, summary judgment must be granted.

### 6. Transactions Between the Bank of Old York Road, the Bank of King of Prussia, and the Bank of New York

■ Paragraph 25(f) of the complaint alleges a failure to disclose transactions between the Bank, the BOKOP and the Bank of New York. Specifically, the Bank and BOKOP deposited substantial sums of money into the Bank of New York without earning any interest. These deposits were supposedly in exchange for benefits conferred upon the defendants who control the Bank of New York. The proxy materials do not address these transactions, although they do indicate the affiliations between the Bank and BOKOP, noting that the directors and officers of the former are the majority shareholders in the latter. Drawing all reasonable inferences in favor of the non-moving party, as I must on a motion for summary judgment, I find that these transactions were not in the best interest of the Bank. Presumably, the Bank could have received interest on the money deposited. Therefore, unless this information is immaterial, summary judgment is not appropriate, as there is a genuine issue of fact.

This behavior is, in the first instance, corporate waste and mismanagement. Under the *Gaines* formulation, it would therefore not be material. However, two points lead me to the opposite conclusion. Since

---

**5.** Plaintiff's only evidence, his affidavit, did not   in any way rebut the lack of a pension plan.

certain defendants are allegedly benefitted, this also has elements of self-dealing, which falls on the "material" side of *Gaines*. Perhaps more importantly, this corporation is a Bank. The management of its finances are at the very core of its existence and something about which the shareholders must be apprised. Therefore, summary judgment is denied as to this allegation.

### 7. *Criminal Allegations*

■ Paragraph 25(h) of the complaint alleges that defendants knowingly made false statements, reports, entries in books, overvalued property, misapplied funds and committed other illegal acts in violation of 18 U.S.C. §§ 656, 1005 and 1014 (1976).[6] However, the complaint is no more specific than the allegations in the preceding sentence. It affords the defendants and this court absolutely no detail so as to be able to identify the alleged wrongful acts or at least narrow the scope of the inquiry. As the court in *Lewis v. Valley,* 476 F.Supp. 62 (S.D.N.Y.1979) noted, this "is little more than an attempt to acquire a fishing license into the corporate defendant's affairs over a ten year period." *Id.* at 65. *Lewis* also involved vacuous allegations of improper behavior. Specifically, the plaintiff attacked the failure to disclose "secret unauthorized and illegal payments in sums in excess of $4,400,000 consisting of illegal discounts, rebates, payoffs and political contributions to secure domestic and foreign business and special political favors ...." *Id.* at 64. The court in *Lewis* held that these

allegations were so lacking in specificity as to warrant dismissal. *Id.* Here the conclusory allegations of criminal behavior are identical in character to those in *Lewis.* Indeed, the broad brush allegations of false statements, reports and property overvaluation would require this court to investigate literally all of the Bank's activities during the contested period. Thus, I agree with the court in *Lewis* that the total lack of specificity is a fatal flaw. In addition, I agree with the sentiment expressed in *Amalgamated Clothing v. J.P. Stevens and Co.,* 475 F.Supp. 328 (S.D.N.Y.1979), *vacated on other grounds,* 638 F.2d 7 (2d Cir. 1980); "the proxy rules simply do not require management to accuse itself of antisocial or illegal policies." *Id.* at 331.[7] Therefore, summary judgment will be granted in favor of the defendants on these criminal allegations.

### 8. *Fringe Benefits*

The remaining allegations in the complaint focus on the nondisclosure of various "fringe benefits" supposedly enjoyed by the defendants. These benefits include an apartment in Florida, unnecessary travel and entertainment expenses, (Complaint, ¶ 25(i)), a residential farm where inadequate or no rent was charged, (Complaint, ¶ 25(k)), and the usurpation by one defendant of a corporate opportunity—a certain piece of land (Complaint, ¶ 25(g)). Again, I will utilize the *Gaines* analysis.

---

**6.** Paragraph 25(d) of the complaint pointed to the failure to disclose that Perch Hankin had violated federal election laws in the Shapp-for-President campaign. However, the conviction in question was reversed and the 1979 proxy materials did disclose the controversy. Plaintiff has withdrawn this allegation, noting that "it appears at this stage of the proceedings that sufficient disclosure was made in the 1979 proxy misstatement." Plaintiffs' Initial Memorandum in Opposition to Defendants' Motion for Summary Judgment at 4.

**7.** Many courts have held that the failure to disclose improper or illegal payments in the proxy materials for the election of directors does not state a cause of action under section 14(a) and Rule 14a–9. The missing element is "transaction causation." Basically, these cases

hold that there is no causal link between the failure to disclose and the injury since the proxies are being solicited for a different purpose. *See, e.g., Limmer, et al. v. General Telephone and Electronics Corp.,* et al., 1977–78 Fed.Sec. L.Rep. (CCH) ¶ 96,111 (S.D.N.Y.1977); *Lewis v. Elam,* 1977–78 Fed.Sec.L.Rep. (CCH), ¶ 96,-013 (S.D.N.Y.1977); *Levy v. Johnson,* 1976–77 Fed.Sec.L.Rep. (CCH), ¶ 95,899 (S.D.N.Y.1977). In *Limmer,* the court specifically rejected the argument that the directors would never have been reelected had the shareholders been aware of their activities. The court noted that the connection between the proxies and the injury was too tenuous where the actual damage—improper payments—sounded like a state action for breach of fiduciary duty. *Limmer,* ¶ 95,899 at 92,002.

The 1980 proxy statement plainly stated that officers and directors received personal benefits unrelated to Bank affairs not in excess of five thousand dollars. Although the proxy materials did not earmark how these funds were spent, there was at least some recognition of receipt of personal benefits. The apartment in Florida and travel and entertainment expenses could have been easily covered in that sum. Using the *Gaines* analysis, an apartment in Florida and travel expenses would not be deemed material. They may very well be a waste of corporate assets and involve subtle mismanagement, but under *Gaines,* this behavior would fall into the immaterial category. This is especially true here, where the shareholders were informed that some monies were being used for non-business related benefits. Thus, summary judgment will be granted on this point.

The other fringe benefits are more problematic. Although the five thousand dollar sum disclosed might feasibly cover some of these allegations, it is unlikely that it covers all. More importantly, the remaining allegations all involve self-dealing. Defendants were benefitting from the rental free farm and the purchase of land valuable enough to attract the Bank's interest. Under the *Gaines* formula, transactions involving self-dealing are presumptively material. This approach does make sense. The directors hold a special fiduciary role vis-a-vis the corporation and shareholders have a right to be aware of major personal benefits reaped as a result of that position. *See Galef v. Alexander,* 615 F.2d 51, 65 (2d Cir.1980) (remuneration of directors of especial interest in election context.) [8] Thus, summary judgment will be denied on this point.

After careful consideration, the only federal securities issues remaining in the case are the transactions with the Bank of New York, the changes in the profit sharing plan, the rent free farm and the purchase of a corporate opportunity. Summary

judgment shall be granted on all other issues.

### B. *Count II: The State Claims*

Count II of the complaint alleges breaches of fiduciary duties involving a course of conduct of gross mismanagement, self-dealing and the waste of corporate assets. Defendants claim that they are entitled to summary judgment, citing plaintiff's failure to exhaust his intercorporate remedies and post a security bond. Plaintiff maintains that a demand on the Board of Directors would have been futile, as the present board members are defendants. However, in light of my decision with respect to Count I of the complaint, I will not decide these issues, but instead will decline jurisdiction.

The state claims are before this court on the basis of pendent jurisdiction. The standards for the exercise of pendent jurisdiction were set down by the United States Supreme Court in *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). There are two facets of pendent jurisdiction—the constitutional *power* of a federal court to hear the case under Article III of the United States Constitution and *discretion.* 383 U.S. at 725–26, 86 S.Ct. at 1138–39. The former is satisfied when the federal and state claims are part of one "constitutional case," arising "from a common nucleus of operative act." *Id.* at 725, 86 S.Ct. at 1138. The latter is satisfied when trying the claims together would serve the goals of "judicial economy, convenience and fairness to the litigants." *Id.* at 726, 86 S.Ct. at 1139.

The federal and state claims here do arise out of the same series of transactions or occurrences. The federal claims are based upon the failure to disclose behavior which might rise to the level of breaches of fiduciary duties. The state claims, however, are based upon the actual breach of these duties as well as their non-disclosure. I find that there exists suffi-

---

8. Rule 14a–3 and Schedule 14A are specially devoted to the topic of director's remuneration.

*See* 17 C.F.R. § 240.14a–3 (1982).

cient factual identity between the claims so as to confer upon this court constitutional power to hear the state claim.

■ However, the breadth of the state claims is much more far-reaching than the remaining federal claims. The few remaining non-disclosures under the securities laws are dwarfed by the alleged web of self-dealing and mismanagement. Thus, despite the existence of the requisite power, I am constrained to exercise my discretion and dismiss the state claims. As the Supreme Court in *Gibbs* noted; "pendent jurisdiction is a doctrine of discretion, not of plaintiff's right." *Id.* at 726, 86 S.Ct. at 1138. *Accord, Broderick v. Associated Hospital Service of Philadelphia,* 536 F.2d 1, 8, n. 25 (3d Cir.1976). More pertinently, the *Gibbs* court stated:

> Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well. Similarly, if it appears that *the state issues substantially predominate,* whether in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought, *the state claims may be dismissed without prejudice and left for resolution to state tribunals.*

*Gibbs,* 383 U.S. at 726–27, 86 S.Ct. at 1139 (emphasis added) (citations omitted). Indeed, this suit, as it now stands, is basically grounded in state law. "Once it appears that a state claim constitutes the real body of the case, to which the federal claims are only an appendage, the state claim may fairly be dismissed." *Gibbs,* 383 U.S. at 727, 86 S.Ct. at 1139. Since the state issues predominate and are at the heart of the surviving federal claims, I shall exercise my discretion and decline jurisdiction over Count II. These claims shall be left to the state tribunals where they more properly belong. Count II shall be dismissed without prejudice.

An appropriate order follows.

**ORDER**

AND NOW, this 22nd day of December, 1982, in accordance with the foregoing Memorandum, it is hereby ORDERED that Defendants' Motion for Summary Judgment is GRANTED in part and DENIED in part.