Myron **GREENFIELD** et alia,
Plaintiffs,

v.

**PROFESSIONAL CARE, INC.** et
alia, Defendants.

No. CV–86–2660.

United States District Court,
E.D. New York.

Oct. 20, 1987.

Wolf, Popper, Ross, Wolf & Jones by Lester L. Levy, New York City, for plaintiff Greenfield.

Goodkind, Wechsler, Labaton & Rudoff, by Lawrence Sucharow, New York City, for plaintiff Yorkes.

Milberg, Weiss, Bershad, Specthrie & Lerach, New York City, for plaintiff Baum.

Bizar, D'Alessandro, Shustak & Martin, New York City, for plaintiff Schlossberg.

Willkie, Farr & Gallagher by Richard L. Klein, New York City, for Professional Care.

Wolf, Haldenstein, Alder, Freeman & Herz by Eric Levine, New York City, for Weissman et al.

Dornbush, Mensch, Mandelstam & Silverman, New York City, for other defendants.

## MEMORANDUM AND ORDER

SIFTON, District Judge.

In this proposed class action defendant Professional Care, Inc. ("PC") and five of its directors are charged with violating § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Securities Ex-

change Commission Rule 10b–5, 17 C.F.R. § 240.10b–5. PC and defendants Martin Weissman and Israel Cohen, who serve as PC's president and executive vice-president, respectively, are also charged with violating the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961 *et seq.* Each defendant is further charged with pendent state claims for breach of fiduciary duty, misrepresentation, and fraud. The matter is before the Court on defendants' motions to dismiss the federal claims pursuant to Rules 9(b) and 12(b)(6) and, if successful, to dismiss the pendent claims for lack of subject matter jurisdiction.

Taking as true plaintiffs' factual allegations, the complaint states the following. The proposed class members include all shareholders who purchased PC stock between August 15, 1981, and August 7, 1986, and who still held the stock on August 7, 1986. PC, a New York based corporation, is the nation's largest home health care company providing health care personnel and equipment to nursing homes, hospitals, and people at home. For many of the services it provides, PC is eligible and receives reimbursement under New York State's Medicaid program. According to the complaint, beginning no later than May 1981, PC, under the direction of defendants Weissman and Cohen, engaged in a continuing scheme to defraud New York State's Medicaid program by filing claims for services that were rendered by persons who lacked the necessary qualifications to be eligible for Medicaid reimbursement. The complaint further alleges that PC, Weissman, and Cohen falsified numerous business records in order to conceal their receipt of the unlawful payments.

As a result of these activities, on August 7, 1986, PC, Weissman, Cohen, and the director of PC's Albany office were indicted by a New York grand jury for falsifying business records, grand larceny, and conspiracy.[1] On September 15, 1986, the Albany employee pleaded guilty to the grand larceny and conspiracy counts. At her plea

allocution, she stated that Weissman and Cohen directed the falsification of training certificates, physical examination reports, employee references, and other business records. She further stated that other PC employees, including the managers of PC's New York City and Albany offices were involved in the scheme. A subsequent audit by the New York State Attorney General's office has concluded that PC owes approximately $2 million in wrongfully paid Medicaid funds.

As a result of this fraud, the complaint alleges that the defendants were responsible for issuing and filing public documents that were materially misleading for failing to disclose that certain portions of PC's earnings reflected payments that were illegally obtained and subject to forfeiture. These documents include but apparently are not limited to PC's annual reports to shareholders for the years ended September 30, 1981, through September 30, 1985, Form 10–K reports for those fiscal years, quarterly reports to shareholders, and a Form S–2 registration statement filed on March 12, 1985, and amendments thereto filed on May 24 and 30, 1985. These documents are also alleged to be materially misleading for failing to disclose that PC was engaged in a regular practice of utilizing unqualified employees whose services were not eligible for reimbursement and for not disclosing the risk that PC would be declared ineligible for Medicaid reimbursement if the scheme were detected, something which has now occurred. Finally, the complaint alleges that PC's most recent SEC filings prior to the issuance of the indictment were misleading for failing to reveal that New York State was conducting an investigation into possible Medicaid fraud.

### 10b–5 Claims

■ Defendants, relying on *United States v. Matthews,* 787 F.2d 38 (2d Cir. 1986), seek dismissal of the 10b–5 claims on the ground that uncharged criminal con-

---

1. On the day that the indictment was issued, the value of PC's common stock dropped from $7¼ per share to $4 per share.

duct need not be disclosed under the federal securities laws as a matter of law. In response, plaintiffs have defended only those portions of the complaint alleging a violation of Rule 10b–5 on the basis of material misstatements and omissions concerning PC's true financial condition. Because the Court finds that the information concerning the true nature of PC's earnings was material, defendants' motions to dismiss are denied.

In *Matthews*, the general counsel of Southland Corp. was charged with conspiring to bribe members of the New York State Tax Commission and for failing to disclose his criminal conduct in a proxy statement in violation of § 14(a) of the Securities Exchange Act, 15 U.S.C. § 78n(a). Matthews was acquitted on the conspiracy count, but was convicted on the § 14(a) violation. The Second Circuit, however, reversed the conviction. On the facts of the case, the court of appeals noted that the evidence of the existence of a conspiracy to bribe tax officials was thin, and, therefore, it was difficult to conclude that any "true" facts were actually omitted from the proxy statement. 787 F.2d at 45–46. Second, the court remarked upon the great uncertainty that existed at the time over corporate management's obligation to disclose "qualitative" information relating to management ability and integrity. In particular, the court emphasized that efforts by the SEC to expand upon the minimum disclosure requirement of Schedule 14A to include greater amounts of qualitative information were ultimately abandoned because of the controversy the proposal engendered. *Id.* at 47–48. Finally, the court summarized the prior case law which had also rejected efforts to require management to make qualitative disclosures that were not at least implicit in the commission's rules. *Id.* at 48. *See, e.g., Gaines v. Haughton*, 645 F.2d 761, 779 (9th Cir.1981); *Lewis v. Valley*, 476 F.Supp. 62 (S.D.N.Y. 1979); *Levy v. Johnson*, [1976–77 Transfer Binder Fed.Sec.L.Rep. (CCH) ¶ 95,899 (S.D. N.Y.1977); *Limmer v. GTE*, [1977–78

Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 96,111 (S.D.N.Y.1977); *Amalgamated Clothing & Textile Workers Union v. J.P. Stevens & Co.*, 475 F.Supp. 328, 331–32 (S.D.N.Y.1979), *vacated as moot*, 638 F.2d 7 (2d Cir.1980); *see also Maldonado v. Flynn*, 597 F.2d 789, 796 (2d Cir.1979).

However, an important distinction between *Matthews* and the cases upon which it relies and the present one is the purely qualitative nature of the information concerning wrongdoing that was withheld from investors in the earlier cases. Here, by contrast, the complaint alleges that defendants made misstatements and omissions that directly related to PC's earnings. Information going directly to the financial condition of the company falls squarely within the range of information for which there is a "substantial likelihood that a reasonable shareholder would consider ... important in deciding [whether to invest]." *TSC Industries, Inc. v. Northway, Inc.*, 426 U.S. 438, 449, 96 S.Ct. 2126, 2132, 48 L.Ed.2d 757 (1976). Thus, unlike the purely "qualitative" information cases, the omitted information here is material, *see Gladwin v. Medfield Corp.*, 540 F.2d 1266, 1268–69 (5th Cir.1976) (information concerning negotiations for repayment of substantial medicaid overpayments deemed material), and, if true, ought to have been disclosed in order to render defendant's public statements concerning its financial condition not misleading [2], *see Roeder v. Alpha Industries, Inc.*, 814 F.2d 22 (1st Cir.1987) (existence of bribery scheme to obtain defense subcontracts not insulated from disclosure until indictment probable); *SEC v. Beefpackers, Inc.*, [1977–1978 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 96,079 (D.Neb.1977) (failure to disclose existence of cash fund for bribing meat inspectors rendered defendant's Form 10–k materially misleading despite absence of criminal charges). *See generally* E. Roiter, Illegal Corporate Practices and the Disclosure Requirements of the Federal Securities Laws, 50 Fordham L.Rev. 781, 790–96

**2.** Defendants do not raise the fifth amendment as a ground for dismissal, and, therefore, the

Court does not reach this issue.

(1982). Accordingly, defendants' motions to dismiss the 10b–5 claims as a matter of law are denied.[3]

■ Each of the defendants also moves to dismiss the 10b–5 claims on the ground that fraud has not been alleged with the requisite particularity. Rule 9(b) requires that "in all averments of fraud or mistake, the circumstances constituting the fraud or mistake shall be stated with particularity." To satisfy this burden the complaint must "allege with some specificity the acts constituting the fraud," and "conclusory allegations that defendants' conduct was fraudulent or deceptive are not enough." *Decker v. Massey–Ferguson,* 681 F.2d 111, 114 (2d Cir.1982). In the context of a securities transaction, this means that the complaint must specify the statements alleged to be false or deceptive, the manner in which the statements are alleged to be fraudulent, the time and place at which the statements were made and identify the defendants charged with making the statements, either directly or as aiders and abettors. *See Goldman v. Belden,* 754 F.2d 1059, 1069–70 (2d Cir.1985); *Denny v. Barber,* 576 F.2d 465, 469 (2d Cir.1978). Furthermore, while knowledge or intent may be averred generally, the complaint must allege a sufficient factual basis to support an inference of scienter. *Goldman, supra,* 754 at 1070.

Beyond protecting a defendant's reputation and preventing strike suits, Rule 9(b) principally serves to ensure that the defendant is given "fair notice of what the plaintiff's claim is and the grounds upon which it rests. *Ross v. A.H. Robins Co.,* 607 F.2d 545, 557 (2d Cir.1979). In serving these goals, however, Rule 9(b) must be harmonized with the parallel provision of Rule 8 which requires the the pleadings contain a "short plain statement of the claim" and which prohibits the pleading of evidentiary matters. *Id.* at 557 n. 20.

■ Applying these standards to the two management defendants, it is clear that the fraud allegations regarding materially misleading statements as to PC's financial condition are sufficient to satisfy Rule 9(b). Despite defendants' vigorous denials, the complaint particularizes the public filings alleged to be materially deceptive,[4] even down to identifying the pages on which the deceptive statements appear. The complaint particularizes the manner in which each of these statements were misleading, the basis for these allegations, as well as sufficient facts regarding the inside defendants' alleged participation in the scheme to permit a reasonable inference of scienter. The fact that some of the allegations are drawn from an unproven indictment or statements made during a plea allocution is not fatal, since information exclusively within the defendants' control may be pleaded on information and belief, where, as here, there is an adequate statement of the facts upon which the belief is founded. *See Segal v. Gordon,* 467 F.2d 602, 608 (2d Cir.1972). Moreover, as a general matter, when inside directors are involved inferences of fraud may be drawn that might otherwise not be permissible. *See Luce v. Edelstein,* 802 F.2d 49, 55 (2d Cir.1986); *Goldman v. Belden,* 754 F.2d 1059, 1070–71 (2d Cir.1985).

■ With respect to the remaining individual defendants, the complaint alleges that defendants Levine, Morgenstern and Kess[5] served as members of PC's audit committee, in which capacity they were responsible for monitoring PC's "internal and external audit functions, control systems,

---

**3.** Defendants' argument that the action is "premature" because it has yet to be determined whether any earnings were actually overstated is meritless. Plaintiffs have not framed the complaint so as to make it dependent on the results of the state criminal proceedings; and, therefore, the unique circumstances found in *Joseph v. Friedman,* N.Y.L.J., July 1, 1976, at 6, Col. 6 (Sup.Ct.N.Y.Co.), *aff'd,* 57 A.D.2d 799, 394 N.Y.S.2d 400 (1st Dep't 1977), are not present here.

**4.** However, to the extent the complaint refers to documents that are not specifically alleged, Rule 9(b) has not been satisfied. Only those documents specifically alleged may form part of plaintiffs' complaint.

**5.** Kess did not join the audit committee until December 1985. Prior to that time he served on the board, but his role is not alleged in the complaint.

financial accounting and reporting, and adherence to applicable legal, ethical and regulatory requirements." The complaint also alleges that these defendants caused to be issued public documents falsely representing PC's financial condition with either actual knowledge or reckless disregard of the existence of the ongoing fraud occurring at PC. In particular, the complaint charges that each of these defendants signed an amended registration statement on May 30, 1985, and a Form 10K on January 9, 1986, after the corporation was informed of New York State's investigation and after the Albany office director informed PC's corporate counsel of the ongoing fraud.

■ While there is some dispute as to whether these defendants should be treated as insiders or outsiders, on the facts pleaded these defendants appear to be much closer to the position of an inside director than they are to that of a typical outside director. *See In re AM Int'l, Inc. Securities Litigation,* 606 F.Supp. 600, 605 (S.D.N.Y.1985). In any event, defendants' reliance on *Decker v. Massey–Ferguson, supra,* and *Lanza v. Drexel & Co.,* 479 F.2d 1277 (2d Cir.1973), is misplaced. Both of those cases involved claims against outside directors who either had been shown after trial to have had no awareness of any fraudulent behavior, *Lanza,* 479 F.2d at 1288, or as to whom there were insufficient factual allegations from which to infer that they had knowledge of the small amounts of illegal payments. *Decker,* 681 F.2d at 119–20. Here, however, there are sufficient facts to support an inference that the audit committee members either had actual knowledge of the ongoing fraud or recklessly disregarded its existence.

Finally, the complaint adequately pleads both causation and reliance. Accordingly, defendants' motions to dismiss the Rule 10b–5 claims are denied.

### *RICO*

Count 2 of the complaint charges defendants PC, Weissman, and Cohen with violating § 1962 of RICO. Although the complaint fails to state which section of § 1962

was violated, the relevant section would appear to be § 1962(c). To state a claim under that section, a plaintiff must allege each of the following elements: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985). Defendants challenge the sufficiency of the complaint with respect to the first, second and third element.

Count 2 of the complaint, which incorporates by reference the previous sections of the complaint, contains the following pertinent additional allegations:

"The 'enterprise' within the meaning of 18 U.S.C. § 1961 is the interaction and relationship between defendants PCI, Weissman and Cohen with regard to the scheme to defraud set forth herein. Defendants named in this claim for relief have engaged in a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961, and the proceeds of that activity was [sic] used or invested, directly and indirectly, in the operation of PCI. Defendants Cohen, Weissman and PCI engaged in a pattern of racketeering activity through numerous acts of securities fraud and other indictable offenses.

\*   \*   \*   \*   \*   \*

"Plaintiffs and the members of the Class were damaged by the aforesaid pattern of racketeering, including acts of fraud on the State of New York (filing of false claims, falsifying business records, providing services by unqualified personnel) and the securities fraud on the Class (including filing of false and misleading statements with the SEC), as set forth in paragraphs 1 through 27 herein, because those activities artificially inflated the market price of PCI stock, and plaintiffs and the Class members have suffered damage from their purchases of such stock at inflated prices."

Complaint, ¶¶ 38, 40.

■ Taking up defendants' arguments out of order, defendants seek dismissal of the RICO claim on the ground that the predicate acts have not been alleged with

particularity. *See Moss v. Morgan Stanley, Inc.*, 719 F.2d 5, 19 (2d Cir.1983). The RICO statute defines racketeering activity to include "fraud in the sale of securities." 18 U.S.C. § 1961(1)(D). Since the 10b–5 claims have been alleged with the requisite particularity, the conduct element has been satisfied. However, insofar as the RICO claim also purports to rest upon unidentified instances of "other indictable" offenses presumably involving mail or wire fraud violations, the complaint fails to satisfy Rule 9(b) since there is no particularization of when the statements were made or precisely in what manner any particular statement was fraudulent.

■ A second objection is that the complaint fails to allege a pattern of racketeering activity because, in its own terms, it charges the defendants with engaging in a single scheme to defraud. While the complaint does at times refer to a single fraudulent scheme, this is not fatal since even a single scheme involving two or more acts conducted through a continuing enterprise may satisfy RICO's pattern element. *See Beck v. Manufacturers Hanover Trust Co.*, 820 F.2d 46, 51 (2d Cir.1987); *United States v. Ianniello*, 808 F.2d 184 (2d Cir. 1986).

While the allegations of plaintiffs' complaint are not a model of clarity, taken as a whole, the complaint charges defendants with associating with an enterprise which, over a four-year period, committed numerous acts of fraud with the common purpose of defrauding Medicaid and misrepresenting to the investing public PC's true financial status. Thus, under *Beck* and *Ianniello*, it is clear that the pattern element has been satisfied.

■ Defendants' final objection relates to the complaint's definition of the enterprise. The first prong of their argument is that the enterprise as alleged here is faulty since it is indistinguishable from the purported predicate acts of racketeering activity. *See United States v. Turkette*, 452 U.S. 576, 583, 101 S.Ct. 2524, 2528, 69 L.Ed.2d 246 (1981). While again the complaint's meaning is somewhat unclear, a fair reading—and the one urged by plaintiffs in their brief—is that the "enterprise" includes both the illegitimate and legitimate aspects of defendants' business and is, therefore, distinct from the alleged pattern of racketeering activity. *See also Moss v. Morgan Stanley, Inc., supra*, 719 F.2d at 21–22.

By the same token, however, there is some merit to defendants' second objection which contends in part that PC cannot be both the RICO enterprise and the "person" within the meaning of § 1962(c). It is now settled in this circuit and most others that a corporate entity may not be simultaneously the enterprise and the person who conducts the affairs of the enterprise through a pattern of racketeering activity. *See Bennett v. United States Trust Co.*, 770 F.2d 308 (2d Cir.1985), *cert. denied*, 474 U.S. 1058, 106 S.Ct. 800, 88 L.Ed.2d 776 (1986). The complaint, however, alleges an association-in-fact enterprise comprising PC and the two individual defendants. Taking this allegation as true, the complaint survives a motion to dismiss since the alleged enterprise is itself a distinct entity, separate from each of the individual defendants, including PC. *See In re Energy Systems Equipment Leasing Securities Litigation*, 642 F.Supp. 718, 739–40 (E.D. N.Y.1986); *Fustok v. Conticommodity Services, Inc.*, 618 F.Supp. 1074, 1075–76 (S.D.N.Y.1985). Ultimately, however, it will be plaintiff's burden to show that PC, Weissman, and Cohen were associated in a manner apart from the regular affairs of PC's business, otherwise the complaint against PC must be dismissed. *See Atkinson v. Anadarko Bank & Trust Co.*, 808 F.2d 438, 441 (5th Cir.1987). However, even in that event, the complaint may stand against defendants Weissman and Cohen since they still would be chargeable with conducting the affairs of PC through a pattern of racketeering. *See United States v. Computer Sciences Corp.*, 689 F.2d 1181, 1190–91 (4th Cir.1982).

### State Claims

■ Since plaintiffs' federal claims are for the most part sufficient, the Court has pendent jurisdiction over the state law

causes of action. With respect to plaintiffs' claim for punitive damages based upon these state law claims, the Second Circuit has recently summarized the standard under New York law:

> "[P]unitive or exemplary damages may be awarded where the defendant's conduct amounts to such gross, wanton or willful fraud, dishonesty, or malicious wrongdoing as to involve a high degree of moral culpability, making it appropriate to deter the defendants from engaging in similar conduct in the future and to induce the victim to take action against the wrongdoer. Proof of acts aimed at the public generally is not required. Although the need for punitive damages as a deterrent is more apparent in the case of 'those who deliberately and cooly engage in a far-flung fraudulent scheme, systematically conducted for profit' than when the conduct involves a single transaction, such damages have been awarded for a single act of wrongdoing. The test is not the number of wrongful acts but whether the conduct is sufficiently willful and egregious to indicate a need for something more than compensatory relief."

*Whitney v. Citibank, N.A.,* 782 F.3d 1106, 1118 (2d Cir.1986) (citations omitted). In light of the pending criminal indictment and the general allegations of the complaint, the Court is unprepared to rule, as a matter of law, that defendants' alleged conduct fails to satisfy New York's standards for imposing exemplary damages.

For the reasons stated above, defendants' motions to dismiss are denied.

SO ORDERED.