Thomas A. GIULIANO and Michele
N. Giuliano, Plaintiffs,

v.

EVERYTHING YOGURT, INC. and
Richard Nicotra, Defendants.

No. CV–92–1728.

United States District Court,
E.D. New York.

April 28, 1993.

Arthur J. Gallancy, New York City, for plaintiffs.

Gary Trachten, Kudman & Trachten, New York City, for defendants.

## MEMORANDUM AND ORDER

GLASSER, District Judge.

Plaintiff franchisees commenced this civil action under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.* ("RICO"), against a corporate franchisor and its principal. Defendants move to dismiss the complaint under Fed.R.Civ.P. 8(a), 9(b) and 12(b)(6). For the following reasons, defendants' motion is denied in part and granted in part.

### FACTS

Defendant Everything Yogurt, Inc. ("EYI"), a New Jersey corporation, operates a chain of yogurt stores and food stores nationwide under the trade names of "Everything Yogurt" ("EY"), "Bananas" and "South Philly Steaks and Fries." In addition, EYI franchises stores under those trade names to interested individuals. Defendant Richard Nicotra is a director and shareholder of EYI.[1]

On or about October 16, 1989, plaintiffs Thomas and Michele Giuliano entered into a

---

1. The complaint also alleges that R & S Ventures, Inc. ("R & S") is an EYI affiliate which is responsible for leasing franchise locations and subletting them to EY franchisees, and that R & S and various EYI and R & S employees were involved in defrauding prospective EYI franchisees. Complaint ¶¶ 8–26. However, R & S and those individuals are not named as defendants in this action, nor does the complaint state whether R & S is a subsidiary of EYI.

franchise agreement with defendants to operate an EY store in the South Street Seaport area. Complaint ¶ 334. Since the franchise was unsuccessful, plaintiffs were forced to close the store in December of 1991. *Id.* ¶ 348. Thereafter, they commenced this civil RICO action alleging that defendants conducted the affairs of an enterprise engaged in interstate commerce through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c) by committing predicate acts of mail fraud and wire fraud (Count I); that defendants conspired to violate § 1962(c) (Count II); and that defendants invested income derived from racketeering activity in an enterprise in violation of § 1962(a) (Count III).

■ In a prolix Second Amended Complaint,[2] plaintiffs state, with excess particularity, predicate acts of mail fraud and wire fraud involving statements that defendants allegedly made to five prospective and eventual EY franchisees from 1987 through 1989. Since many of plaintiffs' allegations do not appear to rise to the level of actionable fraud, only the salient allegations of fraud will be detailed here. The alleged defrauded franchisees include plaintiffs, John and Judith LaBarbara ("LaBarbaras"); Michael Collins, his wife Heidi Noun, and his sister Kathleen Collins ("Collins"); Allan C. Selserman; and Frank and Dawn Monteleone ("Monteleones").[3]

Plaintiffs allege that defendants committed fraud and used "bait and switch" tactics to induce LaBarbaras, Collins and plaintiffs to invest in EY franchises other than those originally proposed to those franchisees. Complaint ¶¶ 35, 52 (LaBarbaras); 84–86 (Collins) and 274 (plaintiffs). Next, plaintiffs allege that defendants intentionally and with deliberate disregard for the truth fraudulently detailed the expenses to be incurred, and overstated the gross income to be realized, in operating various franchises. *Id.* ¶¶ 53–65 (LaBarbaras); 136–139 (Collins); 191, 202–203 (Selserman); 241–243 (Monteleones),

**2.** The Second Amended Complaint is actually the fourth complaint drafted by plaintiffs' counsel in this action. This action was initially commenced on April 9, 1992, upon the filing of a 12 page, 74 paragraph, two-count complaint. An amended complaint was filed on June 23, 1992, which consisted of 15 pages and 92 paragraphs and pleaded two additional predicate acts of wire and mail fraud. When defendants moved to dismiss the amended complaint, plaintiffs sought to file a proposed second amended complaint to cure the deficiencies of the amended complaint and to add a RICO conspiracy claim. Because the proposed second amended complaint was 110 pages and 680 paragraphs long, on September 18, 1992, this Court dismissed the amended complaint without prejudice and granted plaintiffs twenty days to file a second amended complaint that would "meticulously comply with Rule 8, Rule 9 and Rule 12" of the Federal Rules of Civil Procedure. Tr. of Oral Argument on Sept. 18, 1992 at 6–7. Plaintiffs timely filed the Second Amended Complaint on October 3, 1992, consisting of 64 pages and 372 paragraphs.

**3.** *See* Complaint ¶¶ 31–74 (John and Judith LaBarbara); 75–173 (Michael Collins, Heidi Noun, and Kathleen Collins); 174–214 (Allan Selserman); 215–250 (Frank and Dawn Monteleone) and 251–349 (plaintiffs). Paragraphs 31–250 are labelled as "Predicate Acts" A through D. While plaintiffs do not allege that they were injured by those fraudulent acts, those allegations are relevant to demonstrate that defendants engaged in a pattern of racketeering activity. *See* discussion *infra* at end of part 2.

Furthermore, plaintiffs have standing to recover for a RICO violation as long as they were injured through one or more predicate acts even though they were not injured by the remaining predicate acts of mail and wire fraud that were perpetrated on the four other EY franchisees. *See, e.g., Town of Kearny v. Hudson Meadows Urban Renewal Corp.,* 829 F.2d 1263, 1268 (3d Cir.1987) (plaintiff has standing to sue under § 1962(c) notwithstanding that second RICO predicate act of bribery did not injure the plaintiff); *Marshall & Ilsley Trust Co. v. Pate,* 819 F.2d 806, 809 & n. 6 (7th Cir.1987) (injury sustained by plaintiff through one predicate act sufficient to confer standing in civil RICO action); *State Farm Mut. Auto. Ins. Co. v. Rosenfield,* 683 F.Supp. 106, 109–10 (E.D.Pa.1988) (same). *See also Pelletier v. Zweifel,* 921 F.2d 1465, 1497 (11th Cir.1991) ("private plaintiff who wants to recover under civil RICO must show some injury flowing *from one or more predicate acts* ") (emphasis supplied), *reh'g denied,* 931 F.2d 901 (11th Cir.), *cert. denied,* — U.S. ——, 112 S.Ct. 167, 116 L.Ed.2d 131 (1991); *Hecht v. Commerce Clearing House, Inc.,* 897 F.2d 21, 23 (2d Cir. 1990) (plaintiff must show injury by the conduct constituting the RICO violation and "th[at] injury must be caused by a pattern of racketeering activity *or by individual RICO acts.*") (emphasis added); *Banks v. Wolk,* 918 F.2d 418, 424–25 (3d Cir.1990) (plaintiff need not be injured by more than one predicate act of the pattern of racketeering acts); *Zee–Bar, Inc.—N.H. v. Kaplan,* 792 F.Supp. 895, 904 (D.N.H.1992) (same) (citing *Hecht* and *Town of Kearny* ).

330–332 (plaintiffs). Finally, defendants are alleged to have defrauded some of the franchisees by failing to supply them with franchise disclosure materials, as mandated by applicable state law, which would have influenced the decisions of those prospective franchisees whether or not to purchase an EY franchise. *Id.* ¶¶ 153–158, 171–172 (Collins), 208–210 (Selserman), and 238–239 (Monteleones).

Defendants move to dismiss the complaint on the grounds that (1) the predicate acts of mail and wire fraud have not been alleged with the requisite particularity mandated by Fed.R.Civ.P. 9(b); (2) the pleading violates the "short and plain statement" requirement of Fed.R.Civ.P. 8(a); and (3) plaintiffs have not sufficiently pleaded a RICO enterprise. In addition, defendants move to dismiss the third count on the ground that plaintiffs have not demonstrated that they were injured by reason of the alleged § 1962(a) violation and they move to dismiss the second count on the grounds that plaintiffs have not pleaded a RICO conspiracy with the requisite particularity nor have they alleged that they were injured by reason of the alleged conspiracy. For the following reasons, defendants' motion is denied as to the first count, but is granted as to the second and third counts.

## DISCUSSION

### 1. Rules 9(b) and 8(a)

Federal Rule of Civil Procedure 9(b) provides:

> In all averments of fraud or mistake, the circumstances constituting fraud or mistake, shall be stated with particularity. Malice, intent, knowledge, and other conditions of mind of a person may be averred generally.

Fed.R.Civ.P. 9(b).

■ Where a RICO claim is based on predicate acts of mail and wire fraud, the pleading must comply with Rule 9(b). *Beck v. Manufacturers Hanover Trust Co.,* 820 F.2d 46, 49–50 (2d Cir.1987), *cert. denied,* 484 U.S. 1005, 108 S.Ct. 698, 98 L.Ed.2d 650 (1988); *Center Cadillac, Inc. v. Bank Leumi Trust Co. of New York,* 808 F.Supp. 213, 228 (S.D.N.Y.1992); *Grunwald v. Bornfreund,* 668 F.Supp. 128, 130 (E.D.N.Y.1987). To comply with Rule 9(b), a plaintiff must generally state the time, place, speaker, and content of the alleged misrepresentation. *Galerie Furstenberg v. Coffaro,* 697 F.Supp. 1282, 1288 (S.D.N.Y.1988) (citing *Luce v. Edelstein,* 802 F.2d 49, 54 (2d Cir.1986)). "However, the complaint need not specify the time, place and content of each mail communication where the nature and mechanics of the underlying scheme is sufficiently detailed, and it is enough to plead the general content of the misrepresentation without stating the exact words used," *Center Cadillac,* 808 F.Supp. at 229; *Vereins–Und Westbank AG v. Carter,* 639 F.Supp. 620, 623 (S.D.N.Y.1986); *Galerie Furstenberg,* 697 F.Supp. at 1288, especially where the information is exclusively in the possession of the defendants. *Landy v. Mitchell Petroleum Technology Corp.,* 734 F.Supp. 608, 622 (S.D.N.Y.1990); *Grunwald,* 668 F.Supp. at 131. Furthermore, a motion to dismiss under Rule 9(b) will be denied if the pleading contains some allegations of fraud. *Center Cadillac,* 808 F.Supp. at 228.

■ Here, the complaint sets forth in detail the allegations of defendants' statements made with intent to defraud or with deliberate disregard or reckless indifference of the truth or falsity of those statements.[4] For example, plaintiffs allege that defendants intentionally misrepresented to Selserman the rental expense to be incurred in a premises which they had previously leased, Complaint ¶ 203; that they fraudulently misstated

---

4. In the complaint plaintiffs plead, in the alternative, that defendants were "dishonest, reckless and deceptive" and *"knew* or should have known" that a particular statement was false. Complaint *passim* (emphasis supplied). Such allegations satisfy the scienter requirement of the mail fraud and wire fraud statutes because those statutes are violated when a party misrepresents a material fact with "deliberate disregard" of the truth, *United States v. Precision Medical Lab., Inc.,* 593 F.2d 434, 445 (2d Cir.1978), or with "reckless indifference to the truth," *O'Malley v. New York City Transit Authority,* 896 F.2d 704, 706 (2d Cir.1990). *See also Drexel Burnham Lambert v. Saxony Heights Realty,* 777 F.Supp. 228, 238 (S.D.N.Y.1991) (applying O'Malley standard to mail fraud and wire fraud claims).

in a Uniform Franchise Offering Prospectus the number of actions commenced by other franchisees against EYI, ¶¶ 258–263; that they fraudulently misstated to plaintiffs the cost of producing their product despite defendants' prior knowledge and control over its ingredients, ¶¶ 315–321; and that they violated the franchise disclosure laws of three states and even attempted to backdate documents, ¶¶ 150, 172, 208, 245. Thus, notwithstanding that many of plaintiffs' allegations may not be actionable fraud because they either involve statements of opinion, sales talk and puffery or projections of anticipated income and expenses and future conduct, *see* Defs.' Mem. of Law at 38–42,[5] the complaint survives a motion to dismiss because plaintiffs may yet be able to prove two or more predicate acts of mail fraud or wire fraud.

The complaint also adequately informs defendants of the documents which were placed in the United States mails and the various interstate telephone conversations alleged to have been part of their scheme to defraud. Complaint ¶¶ 31, 49, 91–92, 168, 177–178, 197, 216, 226, 241, 245, 255–258, 320, 329, 336. While plaintiffs do not specify the exact dates of all of those communications, nor the respective speakers or writers of all of those communications, the alleged scheme to defraud is sufficiently outlined to place defendants on notice so that they may frame a responsive pleading. In addition, because plaintiffs do not have the documents which

were sent to the other four franchisees, that information is solely in defendants' possession and the alleged fraudulent acts are clearly pleaded with sufficient particularity. Thus, because the complaint viewed in the light most favorable to plaintiffs does allege some fraudulent acts, defendants' motion to dismiss under Rule 9(b) must be denied.

■ Similarly, the complaint sufficiently avers that defendants acted with specific intent to defraud them. It is well settled that to constitute mail fraud the defendant (1) must participate in a scheme to defraud; (2) knowingly use the mails to further that scheme; and (3) must have the specific intent to defraud. *United States v. Rodolitz,* 786 F.2d 77, 80 (2d Cir.), *cert. denied,* 479 U.S. 826, 107 S.Ct. 102, 93 L.Ed.2d 52 (1986); *Beck,* 820 F.2d at 49–50. While Rule 9(b) provides that a pleading may generally allege intent, the pleading must nonetheless contain a "factual basis ... to give rise to a 'strong inference' that the defendants possessed the requisite fraudulent intent." *Beck,* 820 F.2d at 50. A sufficient "factual basis" exists where plaintiffs show that the defendants had a motive for committing fraud and the opportunity to do so. *Id.* Here, the complaint sufficiently alleges that defendants EYI and Nicotra were motivated to defraud franchisees as part of their scheme to obtain franchising fees and they had a "clear opportunity" to defraud prospective franchisees by

5. Defendants contend that projections of future income and expenses cannot give rise to a cause of action for fraud under New York law because an intentional misrepresentation of a material existing fact is an essential element of that cause of action, citing *Channel Master Corp. v. Aluminum Limited Sales, Inc.,* 4 N.Y.2d 403, 407, 176 N.Y.S.2d 259, 262, 151 N.E.2d 833, 835 (1958). However, New York courts recognize a cause of action for fraud where a party misrepresents its present intent to act in accordance with its represented future conduct or knows that its projections of anticipated profits are false when made, and the injured party justifiably relies on those misrepresentations to its detriment, *see, e.g., United States v. Amrep Corp.,* 560 F.2d 539, 544 (2d Cir.1977) (expression of opinion as to anticipated profits, if not honestly believed by the speaker, is a factual misrepresentation), *cert. denied,* 434 U.S. 1015, 98 S.Ct. 731, 54 L.Ed.2d 759 (1978); *Lanzi v. Brooks,* 54 A.D.2d 1057, 1058, 388 N.Y.S.2d 946, 948 (3d Dep't 1976) ("Absent a present intent to deceive, a statement of future intentions, promises or expectations is not actionable on the grounds of fraud.") (citing *Adams v. Clark,* 239 N.Y. 403, 410, 146 N.E. 642, 644 (1925)), *aff'd,* 43 N.Y.2d 778, 402 N.Y.S.2d 384, 373 N.E.2d 278 (1977); *Hotel Constructors, Inc. v. Seagrave Corp.,* 574 F.Supp. 384, 387 (S.D.N.Y.1983) (citing *Sabo v. Delman* 3 N.Y.2d 155, 160, 164 N.Y.S.2d 714, 716, 143 N.E.2d 906, 908 (1957)), but the plaintiff must offer more than mere conclusory allegations of the other's intent not to perform. *Hotel Constructors,* 574 F.Supp. at 388. Here, plaintiffs have sufficiently pleaded facts to support their allegations that defendants fraudulently misrepresented the projected expenses and anticipated income with knowledge that those statements were false when made, or with deliberate disregard for the truth, to induce plaintiffs and the other defrauded franchisees to enter into franchise agreements. The pattern of conduct alleged in the complaint is sufficient to withstand a motion to dismiss.

manipulating the financial figures pertaining to various franchise opportunities.

■■■■■ Defendants simultaneously move to dismiss the complaint under Fed.R.Civ.P. 8(a). Rule 8 mandates that a pleading contain a "short and plain statement" of the grounds for relief because one of the principal purposes of pleading under the federal rules is to provide fair notice of the claims to relief so that the defendant may prepare a defense. *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir.1988). Consequently, "[t]he statement [in the pleading] should be short because unnecessary prolixity in a pleading places an unjustified burden on the court and the party who must respond to it because they are forced to select the relevant material from a mass of verbiage." *Id.* (quotation omitted). Where a pleading fails to comply with Rule 8, it is well settled that the district court has the discretion to dismiss the pleading. *Id.* But where the deficiency of the pleading is that it contains too much detail, the court should generally strike redundant or immaterial matter rather than dismiss the complaint. *Id.* at 43 (dictum). Accordingly, defendants ask this Court to strike all irrelevant material from the pleadings. Defs.' Mem. of Law at 45–46. However, their request to strike is denied because defendants have not shown that any "portion of the pleading ... has 'no bearing on the subject matter of the litigation and that its inclusion will prejudice the[m]. ...'" *Bornfreund*, 668 F.Supp. at 133 (quoting *FRA S. p. A. v. Surg–O–Flex of America, Inc.*, 415 F.Supp. 421, 427 (S.D.N.Y.1976)).

2. Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) provides that a complaint may be dismissed upon motion for "failure to state a claim upon which relief can be granted." A court may only dismiss a complaint under Rule 12(b)(6), if after accepting the material facts alleged in the complaint as true, *Easton v. Sundram*, 947 F.2d 1011, 1014–15 (2d Cir.1991) (citing

*Cooper v. Pate*, 378 U.S. 546, 84 S.Ct. 1733, 12 L.Ed.2d 1030 (1964)), *cert. denied,* —— U.S. ——, 112 S.Ct. 1943, 118 L.Ed.2d 548 (1992), it still appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). Since it is clear that plaintiffs—while unfortunately proceeding under an abundance of caution—have adequately pleaded a cause of action under RICO, defendants' motion must be denied.

The RICO statute provides for a private civil cause of action for "[a]ny person injured in his business or property by reason of a violation of [18 U.S.C. § 1962]. ..." 18 U.S.C. § 1964(c). Section 1962 contains three substantive subsections. Section 1962(a) prohibits any person from investing income derived from racketeering activity in the establishment or operation of an enterprise engaged in interstate commerce. Section 1962(b) prohibits any person, through a pattern of racketeering activity, from acquiring or maintaining an interest in an enterprise engaged in interstate commerce. Section 1962(c) forbids any person to conduct or participate in conducting an enterprise engaged in interstate commerce through a pattern of racketeering activity.[6]

■■■■ Defendants move to dismiss the complaint for failure to state a claim because plaintiffs have failed to adequately plead a RICO enterprise, which is an essential element of a civil RICO action. *United States v. Turkette*, 452 U.S. 576, 583, 101 S.Ct. 2524, 2528, 69 L.Ed.2d 246 (1981). The RICO statute broadly defines enterprise to include, *inter alia,* "any ... group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). Thus, the existence of an enterprise "is proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." *Turkette*, 452 U.S. at

**6.** In sum, to demonstrate that the provisions of section 1962(a)–(c) have been violated, a plaintiff must prove: "(1) that the defendant (2) through the commission of two or more acts (3) constituting a "pattern" (4) of "racketeering activity" (5) directly or indirectly invests in, or maintains an

interest in, or participates in (6) an "enterprise" (7) the activities of which affect interstate or foreign commerce." *Moss v. Morgan Stanley, Inc.*, 719 F.2d 5, 17 (2d Cir.1983), *cert. denied sub nom. Moss v. Newman*, 465 U.S. 1025, 104 S.Ct. 1280, 79 L.Ed.2d 684 (1984).

583, 101 S.Ct. at 2528. In light of *Turkette,* this Circuit has held that an association-in-fact enterprise may be based on a common, illicit purpose as evidenced by the alleged racketeering acts without proof of a formalistic, organizational structure. *United States v. Coonan,* 938 F.2d 1553, 1559–60, 1562 (2d Cir.1991), *cert. denied sub nom. Kelly v. United States,* —— U.S. ——, 112 S.Ct. 1486, 117 L.Ed.2d 628 (1992); *United States v. Bagaric,* 706 F.2d 42, 55–56 (2d Cir.), *cert. denied,* 464 U.S. 840, 104 S.Ct. 134, 78 L.Ed.2d 128 (1983); *United States v. Mazzei,* 700 F.2d 85, 89–90 (2d Cir.1983), *cert. denied,* 461 U.S. 945, 103 S.Ct. 2124, 77 L.Ed.2d 1304 (1983).[7] In this case, plaintiffs have alleged that defendants EYI and Nicotra, together with an EYI affiliate, R & S Ventures, Inc. ("R & S") and shareholders, directors and employees of EYI and R & S engaged in a pattern of racketeering activity to defraud prospective franchisees. Complaint ¶ 26. The common purpose of the alleged "enterprise" was and is to earn illicit income from defrauded franchisees. Accordingly, plaintiffs have adequately alleged the existence of a RICO enterprise.

Defendants initially argued that a corporation and its employees cannot constitute an association-in-fact enterprise because the corporation cannot, simultaneously, be the "person" engaging in the proscribed activity as well as the enterprise which is used to further that activity under *Bennett v. United States Trust Co. of New York,* 770 F.2d 308, 314–15 (2d Cir.1985), *cert. denied,* 474 U.S. 1058, 106 S.Ct. 800, 88 L.Ed.2d 776 (1986). However, defendants now concede that a corporation and its employees, officers or directors may constitute a RICO enterprise. Defs.' Reply Mem. in Supp. of Mot. to Dismiss at 2–3. *See, e.g., Kuczynski v. Ragen Corp.,* 732 F.Supp. 378, 387 (S.D.N.Y.1989); *Richardson Greenshields Secur. Inc. v. Mui–Hin Lau,* 693 F.Supp. 1445, 1449 n. 6 (S.D.N.Y.1988); *Greenfield v. Professional Care, Inc.,* 677 F.Supp. 110, 116 (E.D.N.Y. 1987); *Metzner v. D.H. Blair & Co.,* 663 F.Supp. 716, 722 (S.D.N.Y.1987). *Cf. Center Cadillac v. Bank Leumi Trust Co.,* 808 F.Supp. 213, 236 (S.D.N.Y.1992) (complaint sufficiently pleaded existence of RICO enterprise comprised of corporation, its present employees, and former employees who were allegedly working in tandem with the corporation). *But see Official Publications, Inc. v. Kable News Co.,* 775 F.Supp. 631 (S.D.N.Y. 1991) (corporation and its principal officers cannot constitute RICO enterprise; citing decisions of other Circuits). Moreover, since plaintiffs have alleged that the enterprise includes another corporation, R & S, which allegedly participated in the scheme to defraud, it is quite clear that plaintiffs have adequately pleaded a RICO enterprise. *See, e.g., Fustok v. Conticommodity Servs., Inc.,* 618 F.Supp. 1074, 1075–76 (S.D.N.Y.1985) (corporation and its subsidiary may form an association-in-fact enterprise) (citing *United States v. Huber,* 603 F.2d 387, 393–94 (2d Cir.1979), *cert. denied,* 445 U.S. 927, 100 S.Ct. 1312, 63 L.Ed.2d 759 (1980)).

■ Defendants also contend that plaintiffs must show that the enterprise consisting of EYI, R & S and their employees and officers was engaged in activity separate and apart from normal corporate endeavors, citing *United States v. Turkette,* 452 U.S. 576, 583, 101 S.Ct. 2524, 2529, 69 L.Ed.2d 246 (1981) ("The 'enterprise' ... is an entity separate and apart from the pattern of activity in which it engages."). While plaintiff bears the burden to prove at trial that the members of the alleged enterprise participated in some conduct other than the business of EYI, that is not a basis for dismissal of the complaint at this time. *Greenfield,* 677 F.Supp. at 116. Moreover, if defendants can demonstrate after some discovery has taken place that defendant Nicotra was simply acting in his capacity as an officer of EYI, then a summary judgment of dismissal as to EYI may be appropriate. *See id.*

■ Finally, this Court notes that defendants do not argue that plaintiff has failed to plead the other elements of a RICO claim: that EYI is engaged in interstate commerce and that the alleged predicate acts, if proved

---

7. Consequently, the cases cited by defendants for the proposition that the enterprise must have some form of organizational structure are inap-posite because that is not the rule in this Circuit. *See* Defs.' Mem. of Law in Supp. at 5–12, 19–22.

at trial, would constitute a "pattern" of racketeering activity under *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 239–40, 109 S.Ct. 2893, 2900–01, 106 L.Ed.2d 195 (1989), because they are related and have the requisite continuity or pose a threat of continued fraudulent activity in the future. *Id.* at 239–42, 109 S.Ct. at 2900–02; *see also United States v. Indelicato*, 865 F.2d 1370, 1381–82 (2d Cir.), *cert. denied*, 493 U.S. 811, 110 S.Ct. 56, 107 L.Ed.2d 24 (1989). Racketeering predicates are related if they involve "the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *H.J. Inc.*, 492 U.S. at 240, 109 S.Ct. at 2901. In this case, plaintiffs allege that the same participants, *i.e.*, defendants, defrauded plaintiffs and other EY franchisees for the common purpose of earning illicit franchising fees, and that defendants' fraud involved similar victims in the sense that all of the alleged victims were engaged in obtaining franchises from EYI. *See, e.g., Banks v. Wolk*, 918 F.2d 418, 424–25 (3d Cir.1990) (victims are considered "similar" if they are defrauded while engaging in similar business dealings with defendants). Thus, the relatedness prong is satisfied in this case.

 Likewise, defendants' fraudulent conduct satisfies the continuity aspect of a RICO pattern. " 'Continuity' is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." *H.J. Inc.*, 492 U.S. at 241, 109 S.Ct. at 2902. In this case, it is alleged that defendants' acts of mail and wire fraud extended over a two year period from 1987 to 1989 which satisfies the continuity prong. *Metromedia Co. v. Fugazy*, 983 F.2d 350, 369 (2d Cir. 1992) (predicate acts spanning two year period satisfy continuity prong). In addition, "the threat of continuity may be established by showing that the predicate acts or offenses are part of an ongoing entity's regular way of doing business." *H.J. Inc.*, 492 U.S. at 242, 109 S.Ct. at 2902. Since plaintiffs allege that defendants' normal course of conducting its legitimate business was to defraud franchisees, they have sufficiently pleaded a pattern of racketeering activity under RICO.

### 3. Section 1962(a)

 Defendants move to dismiss the investment of racketeering proceeds claim under 18 U.S.C. § 1962(a) on the ground that plaintiffs have not demonstrated that they sustained a distinct injury through the alleged investment of racketeering proceeds. It is axiomatic that a plaintiff only has standing to sue under the RICO provisions if "he has been injured in his business or property by the conduct constituting the violation." *Sedima S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985); *Moss v. Morgan Stanley, Inc.*, 719 F.2d 5, 17 (2d Cir.1983), *cert. denied sub nom. Moss v. Newman*, 465 U.S. 1025, 104 S.Ct. 1280, 79 L.Ed.2d 684 (1984). To state a claim under § 1962(a), plaintiffs must have sustained an injury through the investment of the racketeering proceeds in an enterprise, *Ouaknine v. MacFarlane*, 897 F.2d 75, 83 (2d Cir.1990), and there must be a "causal connection" between the injury sustained and the prohibited conduct. *Metromedia Co. v. Fugazy*, 983 F.2d 350, 368 (2d Cir.1992).

 Plaintiffs argue that they were injured through defendants· continued investment of illicit proceeds in the enterprise because this, they claim, increased the value of the franchises to be sold, forcing plaintiffs to pay a higher price for their unsuccessful franchise. Pls.' Mem. of Law at 15–16. However, this argument is not persuasive. It is illogical that EYI would hope to increase the cost of EY franchises by reinvesting the proceeds that it earned through defrauding other franchisees. Any increase in the value of a future EY franchise would be more than offset by the injury to EYI's reputation when prior franchises would fail. Nor can plaintiffs recover under this claim simply because defendants reinvested their illicit gains to continue defrauding other prospective franchisees. *See, e.g., Vista Co. v. Columbia Pictures Indus., Inc.*, 725 F.Supp. 1286, 1299–1300 (S.D.N.Y.1989); *Galerie Furstenberg v. Coffaro*, 697 F.Supp. 1282, 1288–89 (S.D.N.Y.1988). Here, plaintiffs claim is

solely predicated on the injuries that they sustained through defendants' racketeering activity, not through the investment of proceeds derived from prior racketeering activity. *See, e.g., In re Gas Reclamation, Inc. Sec. Litig.*, 659 F.Supp. 493, 511 (S.D.N.Y. 1987). Accordingly, this claim is dismissed.

### 4. Section 1962(d)

█ Defendants argue that the conspiracy claim should be dismissed because plaintiffs have not adequately alleged that they sustained an injury related to the conspiracy. However, this argument is summarily rejected in light of *Hecht v. Commerce Clearing House*, 897 F.2d 21 (2d Cir.1990). In *Hecht*, the court held that a civil plaintiff has standing to recover damages on a RICO conspiracy claim if he sustained injury to his business or property through an overt act in furtherance of the conspiracy which would constitute a racketeering predicate act under § 1961. *Id.* at 25. Here, it is clear that plaintiffs claim that they lost money due to defendants' overt acts of mail fraud and wire fraud in furtherance of the alleged conspiracy.

█ Defendants next argue for dismissal of the conspiracy count on the ground that the complaint does not sufficiently plead a RICO conspiracy to violate § 1962(c). Section 1962(d) prohibits any person from conspiring to violate any of the substantive provisions of § 1962(a)–(c). To state a claim under § 1962(d), a plaintiff must allege "facts implying an[ ] agreement involving each of the defendants to commit two [or more] predicate acts." *Hecht v. Commerce Clearing House*, 897 F.2d 21, 25 (2d Cir.1990); *Center Cadillac v. Bank Leumi Trust Co.*, 808 F.Supp. 213 (S.D.N.Y.1992) (citing *United States v. Ruggiero*, 726 F.2d 913, 921 (2d Cir.), *cert. denied*, 469 U.S. 831, 105 S.Ct. 118, 83 L.Ed.2d 60 (1984)). To sufficiently plead a RICO conspiracy, a plaintiff need

only provide some factual basis in accordance with Fed.R.Civ.P. 8, except to the extent that the conspiracy claim relies on underlying allegations of mail fraud or wire fraud. *Hecht*, 897 F.2d at 26 n. 4.

█ In this case, plaintiffs have failed to provide a factual basis to support their conspiracy claim. They broadly allege that the two defendants in this action, EYI and Richard Nicotra, conspired with other employees and officers of EYI and R & S to commit fraud. Complaint ¶¶ 351–359. Yet, the complaint—wordy as it is—does not supply any facts to buttress its "barebones" allegation that EYI, Richard Nicotra or any other person agreed to commit any predicate acts of mail fraud or wire fraud. The complaint is practically silent as to any alleged co-conspirator's role—other than defendants EYI and Richard Nicotra. At most, plaintiffs have alleged that some of the co-conspirators, who are not named as defendants, may have deposited certain letters in the United States mails or made certain telephone calls. But that is insufficient to create a factual basis to believe that they ever intended to agree to commit any fraudulent acts. *Center Cadillac*, 808 F.Supp. at 230, 237. Accordingly, the conspiracy claim is dismissed without prejudice.[8]

### CONCLUSION

For the foregoing reasons, defendants' motion to dismiss is denied as to the § 1962(c) claim (Count I) and is granted in part in that the § 1962(d) claim (Count II) is dismissed without prejudice and the § 1962(a) claim (Count III) is dismissed with prejudice.

SO ORDERED.

---

**8.** At this juncture, this Court declines to dismiss the conspiracy count for failure to state a claim because a corporation cannot "conspire" with its officers or employees who are acting within the scope of their corporate duties. *See, e.g., Agugliaro v. Brooks Bros., Inc.*, 802 F.Supp. 956, 962 (S.D.N.Y.1992) (citing *Girard v. 94th Street and Fifth Avenue Corp.*, 530 F.2d 66, 70 (2d Cir.), *cert. denied*, 425 U.S. 974, 96 S.Ct. 2173, 48 L.Ed.2d 798 (1976)); *Marmott v. Maryland Lum-*

*ber Co.*, 807 F.2d 1180, 1184 (4th Cir.1986), *cert. denied*, 482 U.S. 929, 107 S.Ct. 3214, 96 L.Ed.2d 700 (1987); *see also Hecht*, 897 F.2d at 26 n. 5 (not reaching the issue). Since plaintiff may be able to plead a conspiracy claim if it can identify the precise role that the other corporation, R & S, played in the alleged predicate acts of mail fraud and wire fraud, plaintiff should be given an opportunity to replead with respect to that claim.